JOSEPH ALEGATA *vs.* COMMONWEALTH
(and four companion cases).

Suffolk.    October 3, 1967. — November 17, 1967.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK,
SPIEGEL, & REARDON, JJ.

*Constitutional Law*, Due process of law, Police power, Arrest, Person abroad in nighttime, Vagrancy, Tramp, Vagabond, Idle and disorderly person. *Police. Arrest. Person Abroad in Nighttime. Vagrancy. Tramp. Vagabond. Idle and Disorderly Person. Words,* "Satisfactory," "Idleness," "Disorderly."

The provisions of G. L. c. 41, § 98, that "During the night time . . . [police officers] may examine all persons abroad whom they have reason to suspect of unlawful design, and may demand of them their business abroad and whither they are going . . . . Persons so suspected who do not give a satisfactory account of themselves . . . may be arrested by the police, . . . and taken before a district court

to be examined and prosecuted," purport to create a substantive offence [290–291]; such provisions, in so far as they purport to do so, are, because of vagueness, void on their face as repugnant to the due process clause of the Fourteenth Amendment of the Federal Constitution and to art. 12 of the Declaration of Rights of the Massachusetts Constitution [293].

The provisions of G. L. c. 272, § 66, that "Idle persons who, not having visible means of support, live without lawful employment . . . shall be deemed vagrants, and may be punished by imprisonment," and the provisions of G. L. c. 272, §§ 63, 64, that "Whoever . . . roves about from place to place . . . living without labor or visible means of support, shall be deemed a tramp" and punished therefor, are void on their face as repugnant to the due process clause of the Fourteenth Amendment of the Federal Constitution and to art. 12 of the Declaration of Rights of the Massachusetts Constitution in that they seek to make criminal conduct which cannot fairly be classed as such and are an invalid exercise of the police power, and are void for vagueness. [297, 298]

A person "known to be a pickpocket, thief or burglar" within G. L. c. 272, § 68, is one known to be such by reason of an actual conviction; but even so construed, § 68, providing for punishment as a "vagabond" of such a person "if acting in a suspicious manner around" designated places, is void on its face as an improper exercise of the police power and as being too vague and indefinite. [301]

The word "disorderly" in G. L. c. 272, § 53, is aimed at activities which intentionally tend to disturb the public tranquility, or alarm or provoke others, and sets forth an offence with sufficient definiteness to withstand constitutional challenge on the ground of vagueness. [303–304]

FIVE PETITIONS for writs of error filed in the Supreme Judicial Court for the county of Suffolk on February 9, 1966, and February 15, 1966.

The cases were reserved and reported by *Spalding, J.*, without decision.

*Reuben Goodman* (*Ronald J. Chisholm* with him) for the petitioners.

*Warren K. Kaplan*, Special Assistant Attorney General, for the Commonwealth.

*Willie J. Davis*, Assistant Attorney General, for the intervener Attorney General.

SPALDING, J. These are five petitions for writs of error brought by five persons who were separately convicted of various offences in District Courts. The cases were heard together in the County Court on the pleadings and returns;

no evidence was introduced. The single justice, without decision, reserved and reported all of the cases to the full court.

## THE MITCHELL CASE.

Ralph K. Mitchell was convicted and sentenced to pay a fine under a complaint charging that "being abroad in the night time and being suspected of unlawful design, [he] did not give a satisfactory account of himself." The complaint was based on G. L. c. 41, § 98, the relevant portion of which reads: "During the night time . . . [police officers] may examine all persons abroad whom they have reason to suspect of unlawful design, and may demand of them their business abroad and whither they are going . . .. Persons so suspected who do not give a satisfactory account of themselves . . . may be arrested by the police, . . . and taken before a district court to be examined and prosecuted."[1]

Mitchell challenges the conviction, contending that the quoted provisions of § 98 are unconstitutional on their face because (a) they "[do] not state a crime for which punishment may be imposed and (b) the words which purport to define the prohibited conduct are vague and indefinite." While several provisions of the Constitutions of both this Commonwealth and of the United States are invoked, principal reliance is placed on art. 12 of our Declaration of Rights and the due process clause of the Fourteenth Amendment.

At the outset we must decide whether the challenged provisions of § 98 create a substantive offence. The Special Assistant Attorney General who represented the Commonwealth both in the County Court and in this court takes the position that § 98 defines a substantive offence. The Attorney General, who was permitted to intervene, argues that § 98 does no more than clothe the police with certain powers to stop, detain and arrest persons in the nighttime in certain circumstances. That section, he contends, does not define a crime. In support of this contention he argues that

[1] See now St. 1967, c. 368.

a contrary construction would create doubts as to the constitutionality of the statute and do violence to its history and wording.[2]

We have examined the statutory history which has been set forth in the brief of the Attorney General, and are of opinion that § 98 purports to create a substantive offence. Section 98 empowers the police during the nighttime to "examine all persons abroad whom they have reason to suspect of unlawful design, and may demand of them their business abroad and whither they are going." The section further provides that "Persons so suspected who do not give a satisfactory account of themselves . . . *may be arrested by the police, . . . and taken before a district court to be examined and prosecuted*" (emphasis supplied).

We think that in granting to the police authority to arrest and prosecute "persons so suspected" the language of the statute compels the conclusion that a substantive offence was intended to be created. It would be strange if the power to arrest and to prosecute were granted with respect to conduct which was not criminal. We are mindful of the canon of construction that a " 'statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score' . . . ." *Worcester County Natl. Bank* v. *Commissioner of Banks*, 340 Mass. 695, 701. We are likewise mindful that all rational presumptions are made in favor of the validity of every legislative enactment. *Commonwealth* v. *Finnigan*, 326 Mass. 378. Yet we see no escape from the conclusion

---

[2] The reasons given by the Attorney General for presenting the opposing views are set forth in his brief as follows: "Ordinarily, the Attorney General would not have authorized a Special Assistant Attorney General, arguing on behalf of the Commonwealth, to present a view contrary to that which the Attorney General, himself, holds. However, in order to secure a clear resolution of this issue, the Attorney General believes that the public interest is best served by permitting Special Assistant Attorney General Kaplan to argue for interpretation of the statute as a substantive offense, while, at the same time, he, as Intervenor, presents his own views. Not only will the Court thus have the benefit of argument and authority on both sides of the issue, but also law enforcement officials and other courts will ultimately have the benefit of a decision on this heretofore troublesome, but highly important, matter. Were the Attorney General to impose his own view in this situation, judicial determination of the issue would be postponed indefinitely." See *Attorney Gen.* v. *Department of Pub. Util.* 342 Mass. 662, 665–666.

that § 98 purports to create a substantive offence.[3]  Section 98, to be sure, provides no sanction.  But elsewhere a sanction is furnished.  Under G. L. c. 279, § 5, "If no punishment for a crime is provided by statute, the court shall impose such sentence, according to the nature of the crime, as conforms to the common usage and practice in the commonwealth."

Having determined that § 98 purports to create an offence, we now turn to the petitioner's objections that it proscribes conduct which cannot constitutionally be made criminal and that it is too vague and indefinite.

Except to the limited extent discussed in *Commonwealth* v. *Lehan,* 347 Mass. 197, the constitutionality of § 98 has never been passed upon.  In the *Lehan* case it was held only that § 98 "constitutionally permits a brief threshold inquiry where suspicious conduct gives the officer 'reason to suspect' the questioned person of 'unlawful design,' that is, that the person has committed, is committing, or is about to commit a crime."  P. 204.  The invalidity of the statute on the broader grounds now urged was left undecided in *Commonwealth* v. *Lawton,* 348 Mass. 129, 132.

Mitchell argues, in part, that § 98 is unconstitutional under the Constitutions of this Commonwealth and of the United States inasmuch as it authorizes arrest upon mere suspicion of unlawful design rather than upon probable cause to believe a crime has been committed.  It is a well settled constitutional command that arrests may be made only upon probable cause and not on mere suspicion. *Wong Sun* v. *United States,* 371 U. S. 471, 479.  *Commonwealth* v. *Lehan,* 347 Mass. 197, 202–205.  *Henry* v. *United States,* 361 U. S. 98, 100–101.  Here it cannot be said that Mitchell was arrested upon suspicion alone.  Acting in a suspicious manner is but one element of the offence charged. Thus we need not consider whether § 98 amounts to a cir-

---

[3] Were we to adopt the intervener's contention that no substantive offence was created, there still would remain substantial constitutional doubts by reason of the fact that the statute would authorize an arrest on mere suspicion rather than on probable cause.  See *Commonwealth* v. *Lehan,* 347 Mass. 197, 202, and cases cited.

cumvention of probable cause requirements,[4] because other provisions of § 98, in so far as they authorize an arrest and prosecution rather than a brief threshold inquiry, render the statute unconstitutional on its face. We refer to those portions of the statute which empower the police, after having examined suspicious persons abroad in the nighttime and demanded of them their business abroad and "whither they are going," to arrest and prosecute "persons so suspected who do not give a satisfactory account of themselves."

The enumerated elements of the offence, considered singly, could not constitute a crime. Being abroad in the nighttime no more imports sinister conduct than does the act of sauntering and loitering proscribed by the ordinance held to be invalid in *Commonwealth* v. *Carpenter*, 325 Mass. 519. Yet the statute literally applies to *all* persons, however innocent their conduct may be, who are abroad at night, arouse the *suspicion* of a police officer, and, subsequently, fail *to give a satisfactory account*. It is hard to see how suspicion of unlawful design or failure to give a satisfactory account, without more, can transform otherwise innocent behavior into a crime. Suspicion, which is an inadequate ground for arrest, is no more satisfactory as a basis for punishment. In holding invalid a statute authorizing arrest and prosecution of a "suspicious person" the Court of Appeals for the District of Columbia in a well considered opinion said, "Mere suspicion is no evidence of crime of any particular kind, and it forms no element in the constitution of crime. Suspicion may exist without even the knowledge of the party who is the object of the suspicion, as to the matter of which he is suspected. The suspicion may be generated in the mind of one or more persons without even colorable foundation of truth for the suspicion." *Stoutenburgh* v. *Frazier*, 16 App. D. C. 229, 234–235.

The problem with suspicion is that it is a subjective

---

[4] See Douglas, Vagrancy and Arrest on Suspicion, 70 Yale L. J. 1, 12–13; Dubin and Robinson, The Vagrancy Concept Reconsidered, 37 N. Y. U. L. Rev. 102; Note, Use of Vagrancy-Type Laws for Arrest and Detention of Suspicious Persons, 59 Yale L. J. 1351; Lacey, Vagrancy and Other Crimes of Personal Condition, 66 Harv. L. Rev. 1203.

term incapable of providing any intelligible standard to guide either suspect or court. The absence of limiting standards leaves the citizen at the "mercy of the officers' whim or caprice." *Brinegar* v. *United States*, 338 U. S. 160, 176. See *Commonwealth* v. *Carpenter*, 325 Mass. 519.

Nor can the failure to give a "satisfactory account" cure the defects. This final prerequisite to arrest merely enhances the uncertainties of the statute in view of the imprecision inherent in the word "satisfactory." No statutory guidance is supplied or even hinted at as to what constitutes a satisfactory account. This leaves too much discretion in the hands of the police and the courts. See *United States* v. *Margeson*, 259 F. Supp. 256, 258 (E. D. Pa.). A "'statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.'" *Commonwealth* v. *Carpenter*, 325 Mass. 519, 521, and cases cited.

We hold that the portions of the statute under consideration, in so far as they purport to define a substantive offence, because of vagueness, are void on their face as repugnant to the due process clause of § 1 of the Fourteenth Amendment to the Constitution of the United States and to art. 12 of the Declaration of Rights of the Constitution of this Commonwealth. We are not to be understood as impairing in any way our holding in *Commonwealth* v. *Lehan* which upheld the statute in so far as it permits a brief threshold inquiry in certain circumstances.

It follows that the judgment of the District Court is reversed and judgment is to be entered for the defendant (petitioner here). The petitioner is entitled to costs to be paid by the county of Suffolk. G. L. c. 250, § 12. *Garabedian* v. *Commonwealth*, 336 Mass. 119, 126.

*So ordered.*

### THE PATCH AND FIDO CASES.

These two cases will be considered together, as they involve questions which are closely related.

Albert Patch was convicted in the Municipal Court of the City of Boston under a complaint which charged, among other things, that within certain specified dates he "was and is an idle person who not having any visible means of support has lived without lawful employment." [5] He was sentenced to three months in the House of Correction.

The complaint against Patch was based on G. L. c. 272, § 66, which defines the crime of vagrancy as follows: "Idle persons who, not having visible means of support, live without lawful employment; persons wandering abroad and visiting tippling shops or houses of ill fame, or lodging in groceries, outhouses, market places, sheds, barns or in the open air, and not giving a good account of themselves; persons wandering abroad and begging, or who go about from door to door, or place themselves in public ways, passages or other public places to beg or receive alms, and who do not come within the description of tramps, as contained in section sixty-three, shall be deemed vagrants, and may be punished by imprisonment for not more than six months in the house of correction." It is to be noted that among those deemed to be vagrants are: "Idle persons who, not having visible means of support, live without lawful employment." Thus, while the statute defines a variety of conduct as constituting vagrancy, a person may commit the offence if he comes within the language last quoted. Although the complaint charges Patch with other conduct constituting vagrancy, it charged him with having been an "idle person who not having any visible means of support,

---

[5] The complaint also charged that Patch has "wandered abroad, and visited tippling shops and houses of ill fame, and has lodged in groceries, outhouses, market places, sheds, barns and in the open air, and has not given a good account of himself, — and . . . has wandered abroad and begged, and . . . has gone about from door to door and has placed himself in the public ways, passages and other public places . . . to beg and to receive alms, — the said Patch not coming within the description of tramps . . . [as contained in G. L. c. 272, § 63] whereby the said Patch is deemed a vagrant."

has lived without lawful employment." On this record, where all that appears is a finding of guilty, it is impossible to know that Patch was not convicted under this part of the complaint. See *Stromberg* v. *California,* 283 U. S. 359, 368; *Williams* v. *North Carolina,* 317 U. S. 287, 292; *Robinson* v. *California,* 370 U. S. 660, 665. Thus, if the portion of the statute under which this part of the complaint is grounded is, as Patch urges, unconstitutional on its face, the conviction cannot stand.

Patch seeks to set aside his conviction on the grounds that the challenged portion of the statute (a) "does not state a crime for which punishment may be imposed and (b) the words which purport to define the prohibited conduct are vague and indefinite." Stated differently, the first ground in substance asserts that the provision in question is not a valid exercise of the police power.

What the statute attempts to proscribe is not the commission of some act or acts, as is usually the case in most crimes. Rather it seeks to punish a person because of his status. The offence consists of being a certain kind of person, that is, an idle person, who, not having visible means of support, lives without lawful employment. See Lacey, op. cit. *supra,* at 1203; *Commonwealth* v. *O'Brien,* 179 Mass. 533, 534.

The vagrancy laws are of ancient origin. They stem from the Statutes of Labourers (23 Edw. 3, 25 Edw. 3, Stat. I) the first of which was enacted in 1349. The reasons leading to the enactment of these and subsequent statutes in England are set forth in the following references: Dubin and Robinson, The Vagrancy Concept Reconsidered, 37 N. Y. U. L. Rev. 102; Lacey, Vagrancy and Other Crimes of Personal Condition, 66 Harv. L. Rev. 1203; Douglas, Vagrancy and Arrest on Suspicion, 70 Yale L. J. 1; Opinion of Scott, L.J., in *Ledwith* v. *Roberts,* [1937] 1 K. B. 232, 271, et seq. These statutes originated in the breakup of the feudal system and were aimed at runaway serfs. Subsequent enactments were designed to supplement the Poor Laws, and to prevent crime. Today the sole justification

for the vagrancy laws (which appears to be a crime in most, if not all, American jurisdictions) is the prevention of crime. The philosophy underlying modern vagrancy statutes was stated in *District of Columbia* v. *Hunt*, as follows: "A vagrant is a probable criminal; and the purpose of the [vagrancy] statute is to prevent crimes which may likely flow from his mode of life." 163 F. 2d 833, 835 (Ct. App. D. C.). See *Fenster* v. *Leary*, 20 N. Y. 2d 309.

Although vagrancy statutes have been on the statute books of virtually every State for a long time, they have only recently come under judicial scrutiny on constitutional grounds. Cases where vagrancy statutes have been upheld are: *State* v. *Grenz*, 26 Wash. 2d 764 (5 to 4 decision); *Hicks* v. *District of Columbia*, 197 Atl. 2d 154 (D. C. Ct. App.), cert. dism. as "improvidently granted," 383 U. S. 252; *Dominguez* v. *Denver*, 147 Colo. 233. But vagrancy laws have not gone unchallenged, as the observation of Frankfurter, J., in his dissenting opinion in *Winters* v. *New York*, 333 U. S. 507, reveals. Speaking of vagrancy and similar statutes he said at page 540; "These statutes are in a class by themselves, in view of the familiar abuses to which they are put. . . . Definiteness is designedly avoided so as to allow the net to be cast at large, to enable men to be caught who are vaguely undesirable in the eyes of police and prosecution, although not chargeable with any particular offense. In short, these 'vagrancy statutes' and laws against 'gangs' are not fenced in by the text of the statute or by the subject matter so as to give notice of conduct to be avoided." And two courts very recently have invalidated vagrancy statutes quite similar to ours. *Fenster* v. *Leary*, 20 N. Y. 2d 309. *Baker* v. *Bindner*, 274 F. Supp. 658 (W. D. Ky., a decision by a three judge court). As the New York Court of Appeals pointed out in the *Fenster* case, vagrancy statutes today are used only against "alcoholic derelicts and other unfortunates, whose only crime, if any, is against themselves, and whose main offense usually consists in their leaving the environs of skid row and disturbing *by their presence* the sensibilities of residents of

nicer parts of the community, or suspected criminals, with respect to whom the authorities do not have enough evidence to make a proper arrest or secure a conviction on the crime suspected." Persons of the former group should not be classed as criminals. Idleness and poverty should not be treated as a criminal offence. See *Robinson* v. *California*, 370 U. S. 660. As to persons of the latter group (those vaguely suspected of criminal conduct) the statute may not be used as a short cut to avoid due process requirements.

We hold that the challenged portions of § 66 are void on their face as repugnant to the due process clause of the Fourteenth Amendment and to art. 12 of our Declaration of Rights in that they seek to make criminal conduct which cannot fairly be classed as such and are an invalid exercise of the police power. We also hold that the provisions under consideration are void for vagueness. *Lanzetta* v. *New Jersey*, 306 U. S. 451. *Commonwealth* v. *Carpenter*, 325 Mass. 519, 521. Our holding is confined to the portions of the statute discussed above; we make no intimation one way or the other as to the other provisions of § 66.

We now turn to the Fido case. Riley Fido was convicted under a complaint charging that during the three month period prior to the complaint he "not being a minor under seventeen years of age, a blind person or a person asking charity within his own city or town, did rove about from place to place begging and living without labor or visible means of support, whereby he is deemed to be a tramp." He was sentenced to ten days in the House of Correction.

The complaint was drawn under G. L. c. 272, § 63, which reads in relevant part: "Whoever, not being under seventeen, a blind person or a person asking charity within his own town, roves about from place to place begging, or living without labor or visible means of support, shall be deemed a tramp." Punishment is provided in § 64. We assume that the act of begging proscribed in the statute could properly be made a criminal offence; and there would be no problem with respect to vagueness. It is an annoyance which the Legislature could, in the proper exercise of the

police power, prohibit. Most, if not all, States have statutes prohibiting or regulating begging. See Dubin and Robinson, op. cit. pp. 109–113. But under the complaint Fido could have been convicted if he was roving from place to place "living without labor or visible means of support." On this record we have no way of knowing whether he was found guilty of begging or living without visible means of support, or both. Thus, if the visible support portion of the statute is invalid, the conviction, as in the Patch case, cannot stand. See *Stromberg* v. *California,* 283 U. S. 359, 368; *Williams* v. *North Carolina,* 317 U. S. 287, 292; *Robinson* v. *California,* 370 U. S. 660, 665. The Commonwealth is not aided by the argument that Fido cannot prevail in the absence of any factual record of his conduct by which the application of the statute can be measured.[6] But this argument is answered in *Lanzetta* v. *New Jersey,* 306 U. S. 451, holding a statute to be void on its face for vagueness. There it was said at page 453, "If on its face the challenged provision is repugnant to the due process clause, specification of details of the offense intended to be charged would not serve to validate it. . . . It is the statute, not the accusation under it, that prescribes the rule to govern conduct and warns against transgression. . . . No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes."

A person may violate § 63 if he "roves about from place to place . . . living without . . . visible means of support." Essentially this does not differ materially from the crime of vagrancy defined in § 66. Thus, for the reasons set forth in the Patch case, and on the same grounds, we hold that this portion of the statute is unconstitutional.

It follows that the judgments in both the Patch and Fido cases are reversed and judgment is to be entered for each defendant (petitioner here). Each petitioner is entitled to costs to be paid respectively by the county of Suffolk and the county of Essex. G. L. c. 250, § 12.

*So ordered.*

---

[6] A similar contention is made with respect to the other cases.

## THE ALEGATA CASE.

Joseph Alegata was convicted in a District Court under a complaint which charged that on a day specified he "was a person known to be a thief and a burglar and was then and there acting in a suspicious manner around a store, to wit: Boyd's Inc." in Malden. He received a sentence of nine months in the House of Correction.

This complaint was grounded on G. L. c. 272, § 68, which reads: "A person known to be a pickpocket, thief or burglar, if acting in a suspicious manner around any steamboat landing, railroad depot, or any electric railway station, or place where electric railway cars stop to allow passengers to enter or leave the cars, banking institution, broker's office, place of public amusement, auction room, store, shop, crowded thoroughfare, car or omnibus; or at any public gathering or assembly, shall be deemed a vagabond and shall be punished."

Alegata attacks the constitutionality of the statute on the same grounds pressed in the Mitchell, Patch and Fido cases, namely (a) that the statute proscribes conduct as criminal which cannot constitutionally be made such and (b) that it is vague and indefinite.

The predecessor of § 68 (R. L. c. 212, § 61) was held to be constitutionally valid in *Commonwealth* v. *Ellis*, 207 Mass. 572. That statute was worded somewhat differently. It read in part: "A person who is known to be a pickpocket, thief or burglar and *having no visible or lawful means of support, if found prowling around* any steamboat landing, railroad . . . shall be deemed a vagabond . . ." (emphasis supplied). The italicized words are not in § 68. Because of the difference in wording and the developments in the law which have occurred since 1911, when the *Ellis* case was decided, we do not regard that case as determinative of the questions now presented.

One coming within the statute is "a person . . . known to be a pickpocket, thief or burglar." This is somewhat ambiguous, for it may refer to a person reputed to have committed such a crime or it may refer to one who has

actually been convicted. If the statute means the former it would be difficult to sustain on that ground alone, for it furnishes no intelligible standard as a guide in forming judgment. There is uncertainty whether the reputation must be general or extends only to some persons. See *People* v. *Belcastro*, 356 Ill. 144, 149–150; *Lanzetta* v. *New Jersey*, 306 U. S. 451, 458. The statute is less vulnerable to constitutional attack if the knowledge must be based on an actual conviction of one of the enumerated offences, and we so construe it. There is language in *Commonwealth* v. *Ellis* which tends to support this construction.

But, even as so construed, we are of opinion that the statute cannot stand. Taking each element of the offence separately none of them can constitute an offence. Certainly the fact that one has committed a past offence does not make him a present criminal. The concept of "once a criminal always a criminal" is abhorrent to our law. Such a concept was expressly repudiated in *Commonwealth* v. *Ellis*, 207 Mass. 572, where it was said at pages 575–576, "The commission of the previous crimes referred to in the statute does not constitute a misdemeanor for which . . . [one] may be prosecuted."

Is the other conduct mentioned in the statute sufficient to convert the noncriminal status of being a former criminal into conduct that is punishable? In addition to having formerly committed one of the enumerated offences one must be "acting in a suspicious manner around" any one of the places designated in the statute. The quoted words are altogether too vague to turn noncriminal conduct into an offence. As we said earlier in the Mitchell case in discussing suspicion "it is a subjective term incapable of providing any intelligible standard to guide either suspect or court . . . [and] leaves the citizen at the 'mercy of the officers' whim or caprice.'" Nor do the places where the suspicious acts must occur tend to endow the conduct with criminality. Those places are so all-inclusive as to embrace about any place where a person would be apt to be present outside his own home.

The purpose of a statute of this sort is appealing; it is designed to prevent known pickpockets, thieves or burglars from plying their trade. It is common knowledge that many criminals are repeaters who continue their criminal pursuits despite prior punishment. But some do not. As this statute is drawn, any former pickpocket, thief or burglar may be prosecuted and sentenced to not less than four months nor more than twelve if he is acting "in a suspicious manner" in any one of the designated places. Thus, while the statute may bring to book many who are about to commit a crime, it also brings within its sweep persons who have neither committed nor intend to commit any offence. There can be no doubt that a State may punish one for an attempt to commit a crime. But conduct which falls short of that (which is the aim of the statute here) has never been punishable. The use of the vagabond charge rather than a charge of theft or attempted theft suggests an absence of probable cause and the consequent evasion of traditional constitutional safeguards that results when suspicion, which admits of no predictable boundaries, is the basis for arrest and punishment. As Mr. Justice Jackson (sitting as Circuit Justice) said in *Williamson* v. *United States,* 184 F. 2d 280, 282–283 (2d Cir.), "[I]t is . . . difficult to reconcile with traditional American law the jailing of persons by the courts because of anticipated but as yet uncommitted crimes. Imprisonment to protect society from predicted but unconsummated offenses is so unprecedented in this country and so fraught with danger of excesses and injustice that I am loath to resort to it, even as a discretionary judicial technique to supplement conviction of such offenses of which defendants stand convicted."

We hold that the statute under which Alegata was convicted (G. L. c. 272, § 68) is void on its face because (a) it was an improper exercise of the police power and (b) it is too vague and indefinite. The judgment is reversed and judgment is to be entered for the defendant (petitioner here). The petitioner is entitled to costs to be paid by the county of Middlesex. G. L. c. 250, § 12.

*So ordered.*

### THE CHARTRAND CASE.

A complaint in a District Court charged that Donald G. Chartrand on a specified date "was an idle and disorderly person." He was convicted and ordered to pay a fine of $50 and to serve a sentence of thirty days in jail; the jail sentence was suspended.

The complaint was based on the italicized words of G. L. c. 272, § 53, which reads: "Stubborn children, runaways, common night walkers, both male and female, common railers and brawlers, persons who with offensive and disorderly act or language accost or annoy persons of the opposite sex, lewd, wanton and lascivious persons in speech or behavior, *idle and disorderly persons,* prostitutes, disturbers of the peace, keepers of noisy and disorderly houses and persons guilty of indecent exposure" may be punished in certain ways (emphasis supplied).

The gravamen of the offence is necessarily contained in the word "disorderly." "Idleness" alone is a neutral term today, implying no misconduct. See *Hawaii* v. *Anduha,* 48 F. 2d 171 (9th Cir.); *In re McCue,* 7 Cal. App. 765. It is only against the background of the Poor Laws of Medieval England that the word "idleness" carries any criminal connotations. 3 Stephen, History of the Criminal Law of England, 204, 271. *Ledwith* v. *Roberts,* [1937] 1 K. B. 232, 271, Opinion of Scott, L.J. "Disorderly," on the other hand, appears to be a word of common understanding, the use of which in a criminal proscription would not violate the standards set forth in *Commonwealth* v. *Carpenter,* 325 Mass. 519, 520, and *Winters* v. *New York,* 333 U. S. 507.

Counsel for Chartrand argues that "disorderly" is no more than a catchall expression and is too imprecise to constitute an offence. This contention is supported to a certain extent by both the statutory pattern and case law. Section 53 explicitly differentiates "idle and disorderly" from "disturbers of the peace." And *Commonwealth* v. *Lombard,* 321 Mass. 294, holds that "disorderly" is to be distinguished from "offensive." The statute has had a

long history, dating from the early 17th century (see *Commonwealth* v. *Diamond,* 248 Mass. 511, and *Commonwealth* v. *Lombard, supra*). At times it has been used in such variegated prosecutions as misspending time by frequenting houses of ill fame, *Commonwealth* v. *Sullivan,* 5 Allen, 511; blackmail, *Commonwealth* v. *Tomasselli,* 257 Mass. 479; habitual use of profane language, *Commonwealth* v. *Murray,* 14 Gray, 397; prostitution, *Commonwealth* v. *Doherty,* 137 Mass. 245; and *Commonwealth* v. *Diamond,* 248 Mass. 511. It is important to note, however, that these cases were decided prior to the legislative revision of 1943.

Chapter 48 of the Resolves of 1941 established a special commission "for the purpose of making an investigation and study of the criminal laws of the commonwealth and of drafting a penal code more in harmony with modern conceptions of crime, punishment and correction." The commission recommended amending c. 272, § 53, by striking out the words "rogues and vagabonds, persons who use any juggling or unlawful games or plays, common pipers . . . pilferers, — persons who neglect their calling or employment or who misspend what they earn and do not provide for themselves, — including therein those persons who neglect all lawful business and habitually misspend their time by frequenting houses of ill fame, gaming houses or tippling shops." 1943 House Doc. No. 1462, p. 9. The report of the commission states that "[t]his language should be omitted because the offences described are either outmoded or provided for in other statutes." Finally, the category "disturbing the peace" was added to the section. At one point a further amendment was put forward which would have eliminated "idle and disorderly," but it was rejected. 1943 Senate Journal, p. 790. The bill was enacted in substantially the present form. In 1956, c. 715, § 21, removed common drunkards from the statute's scope as part of a comprehensive program for dealing with alcoholism. See c. 111, §§ 4A, 4B, 4C; c. 123, §§ 2, 62, 80. In 1959, c. 304, § 1, added prostitution as a separate offence to § 53.

It is our opinion that "disorderly" sets forth an offence

with sufficient definiteness to withstand constitutional challenge on the ground of vagueness. Not only has the 1943 revision as well as subsequent amendments eliminated the section's potential use as a catchall definition, but recent case law and legal scholarship have narrowed the scope of the prohibition. *State* v. *Reynolds*, 243 Minn. 196. *State* v. *Givens*, 28 Wis. 2d 109. 12 Am. Jur. 2d 684 et seq. As a result of legislative revision and recent reconsideration of the subject a statute containing the questioned language of § 53 has come to designate behavior such as that singled out in § 250.2 of the Model Penal Code (Proposed Official Draft): "A person is guilty of disorderly conduct if, with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (a) engages in fighting or threatening, or in violent or tumultuous behavior; or (b) makes unreasonable noise or offensively coarse utterance, gesture or display, or addresses abusive language to any person present; or (c) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor. 'Public' means affecting or likely to affect persons in a place to which the public or a substantial group has access." Interpreting the statute, as we do, as embracing conduct of this sort, it aims at activities which intentionally tend to disturb the public tranquility, or alarm or provoke others. See Smith Hurd, Ill. Statutes, Ann. c. 38, § 26–1, Committee Comment at 391. So interpreted the statute charges an offence which is not void for vagueness.

Chartrand chose to challenge § 53 by writ of error. On this record, which contains no evidence but merely the complaint and the sentence, we find no error of law. The judgment is affirmed.

*So ordered.*