COMMONWEALTH *vs.* DIANNE BRASHER.

Bristol.  December 7, 1970. — June 7, 1971.

Present: TAURO, C.J., SPALDING, CUTTER, REARDON, & QUIRICO, JJ.

*Stubborn Child. Common Law Crime. Constitutional Law,* Due process of law, Police power, Equal protection of laws, Stubborn children. *Parent and Child. Words,* "Stubborn children."

Review of the history and development of the provision of G. L. c. 272, § 53, for punishment of "stubborn children." [552–553]

The provision of G. L. c. 272, § 53, subjecting "stubborn children" to punishment is not so vague and indefinite that it violates the due process clause of the Fourteenth Amendment to the Federal Constitution. [553–554]

Statement of the elements of the crime of being a "stubborn child" punishable under G. L. c. 272, § 53, which the Commonwealth must prove beyond a reasonable doubt. [555]

It is within the police power of the Commonwealth to make laws for the punishment of "stubborn children." [556]

A law for the punishment of "stubborn children" who disobey their parents is not unconstitutional as an impermissible intrusion into family life. [556]

There was no merit in an argument of a defendant adjudged a delinquent child by reason of being a stubborn child under G. L. c. 272, § 53, that her constitutional right to the equal protection of laws was violated in that the proceedings against her were brought under c. 119, §§ 52–59, rather than under §§ 24–29 of that chapter. [558]

An adjudication that the defendant was a delinquent child by reason of being a stubborn child under G. L. c. 272, § 53, in that she refused to submit to the lawful and reasonable commands of persons whose commands she was bound to obey was warranted by evidence of disobedi-

ence by her of the orders of the persons in charge of the home in which she was placed, by vile and vulgar language which she used contemporaneously with her disobedience, and by her being outside the home on several occasions when she knew that she should have been at the home. [558–559]

COMPLAINT received and sworn to in the Second District Court of Bristol on May 3, 1969.

Upon appeal to the Superior Court, the case was heard by *DeSaulnier,* J.

*Reuben Goodman* (*Harriet A. Verbin* & *Guy Volterra* with him) for the defendant.

*Peter B. Gay,* Assistant District Attorney, for the Commonwealth.

QUIRICO, J. On May 3, 1969, a complaint issued from a District Court alleging that the defendant "being between seven and seventeen years of age, is a delinquent child in that during the one month last past before the making of this complaint, at Fall River . . . [she] was a stubborn child and did refuse to submit to the lawful and reasonable commands of . . . Michael T. Walsh whose commands said Dianne Brasher was bound to obey. (Violation of Chapter 272, sec. 53, General Laws)." [1] The defendant was tried in the District Court and was adjudged a delinquent child. She appealed to the Superior Court where she was again tried and adjudged a delinquent child. On July 2, 1969, the court ordered the defendant committed to the custody of the Youth Service Board (now the Department of Youth Services), suspended execution of the order for three years, and placed her on probation on condition that she be placed in the home of a named individual at Lowell. See G. L. c. 119, §§ 52–59, inclusive, as amended.

---

[1] General Laws c. 272, § 53, as amended through St. 1959, c. 304, § 1, provides: "Stubborn children, runaways, common night walkers, both male and female, common railers and brawlers, persons who with offensive and disorderly act or language accost or annoy persons of the opposite sex, lewd, wanton and lascivious persons in speech or behavior, idle and disorderly persons, prostitutes, disturbers of the peace, keepers of noisy and disorderly houses and persons guilty of indecent exposure may be punished by imprisonment in a jail or house of correction for not more than six months, or by a fine of not more than two hundred dollars, or by both such fine and imprisonment."

The case is before us on two principal issues raised by the defendant's bill of exceptions. The first issue is whether the statutes under which the defendant is being prosecuted are constitutional. The defendant contends that they are not for the reasons that (a) they deal with a subject matter which is beyond the State's police power, and (b) they are unconstitutionally vague and indefinite. The second issue is whether the evidence presented at the trial is sufficient to warrant a conviction, assuming the constitutionality of the statutes.

The constitutional issue raised by the defendant is directed at the part of G. L. c. 272, § 53, which provides punishment for stubborn children, and for this reason it will be helpful to review the history and development of this part of the statute. This provision appears to have originated in an act passed by the House of Deputies of the Colony of the Massachusetts Bay in New England on August 22, 1654, stating that "it appeares by too much experience that divers children & servants doe behave themselves too disrespectively, disobediently, & disorderly towards their parents, masters, & gouvernors, to the disturbance of families, & discouragement of such parents & gouvernors," and providing "corporall punishment by whiping, or otherwise," for such offenders. Mass. Bay Records, Vol. III (1644–1657) 355. Mass. Col. Laws (1887 ed.) 27.

The next statutory reference to stubborn children is in Prov. St. 1699–1700, c. 8, §§ 2–6, permitting courts to commit various offenders, including stubborn children and other persons now included in G. L. c. 272, § 53, to houses of correction.

When the Constitution of Massachusetts was adopted in 1780, it then provided, and still provides, in Part II, c. 6, art. 6, that "All the laws which have heretofore been adopted, used and approved in the Province, Colony or State of Massachusetts Bay, and usually practised on in the courts of law, shall still remain and be in full force, until altered or repealed by the legislature; such parts only excepted as are repugnant to the rights and liberties con-

tained in this constitution." By virtue of this provision, the part of the Province laws relating to the punishment of stubborn children and certain other offenders became a part of the law of this Commonwealth. *Commonwealth* v. *Knowlton,* 2 Mass. 530, 534–535. *Sackett* v. *Sackett,* 8 Pick. 309, 316–317. *Phillips* v. *Blatchford,* 137 Mass. 510, 513. *Crocker* v. *Justices of the Superior Court,* 208 Mass. 162, 166–167, 171. Over the years the section of the statute which included the punishment of stubborn children was subjected to many amendments and it was included in a number of periodic consolidations and rearrangements of our statutes. Despite this, the provision relating to stubborn children as now contained in G. L. c. 272, § 53, has remained basically the same.

Before discussing this particular case, it is appropriate to note that it is but the latest in a recent series of cases involving attacks, on constitutional grounds, on various provisions of G. L. c. 272, § 53. In *Alegata* v. *Commonwealth,* 353 Mass. 287, 302–304, we upheld the provision for punishment of disorderly persons. In *Thomes* v. *Commonwealth,* 355 Mass. 203, we upheld the provision for punishment of common night walkers. In *Commonwealth* v. *Jarrett, ante,* 491, we upheld the provision for punishment of disturbers of the peace. In *Joyner* v. *Commonwealth,* 358 Mass. 60, 63, we held that the words "stubborn children" as used in § 53 did not include "those who have attained their eighteenth birthday," and we therefore were not required to pass on the constitutional attack on the statute. In the case now before us, the person raising the constitutional question is a child born on July 7, 1954. We must therefore now consider and decide the constitutional question which we did not reach in the *Joyner* case. In doing so we shall deal separately with the several grounds on which the defendant's claim of unconstitutionality is based.

1. The principal ground upon which the defendant relies is that G. L. c. 272, § 53, in so far as it deals with stubborn children, is so vague and indefinite that it "leaves judges

and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case," and therefore violates the due process clause of the Fourteenth Amendment to the Constitution of the United States. The basic constitutional requirements in this regard were considered and discussed, with full citation of authorities, in our recent *Alegata, Thomes* and *Jarrett* cases cited above, and it is unnecessary to repeat the discussion here. Applying those constitutional requirements to the part of § 53 which is before us, we think that it is constitutionally adequate. *Connally* v. *General Constr. Co.* 269 U. S. 385, 391. *United States* v. *Wurzbach,* 280 U. S. 396, 399. *Lanzetta* v. *New Jersey,* 306 U. S. 451, 453. *United States* v. *Petrillo,* 332 U. S. 1, 7–8. *Jordan* v. *De George,* 341 U. S. 223, 231–232.

We note, as we did in the *Jarrett* case, that § 53 does not purport to create or to define new crimes, but rather it prescribes the penalties for persons committing acts theretofore long recognized by our law as amounting to criminal offences. Therefore, the elements of the crime which is identified by the use of the descriptive words "stubborn children" are not to be determined solely on the basis of the inclusion of those words in § 53. We must start by considering the language of the 1654 Colonial law which said that it was "for the ready prevention" of the evil of children who behave themselves "too disrespectively, disobediently, & disorderly towards their parents, masters & gouvernors." Mass. Bay Records, Vol. III (1644–1657) 355. Mass. Col. Laws (1887 ed.) 27. All later enactments, starting with Prov. St. 1699–1700, c. 8, §§ 2–6, limited themselves to prescribing the punishment for such acts and identified the offenders as "stubborn servants or children," and more recently as "stubborn children."

We also note, as we did in the *Thomes* case, the permitted forms of complaints and indictments which are set forth in G. L. c. 277, § 79. They were first incorporated into our general statutes by St. 1899, c. 409, sometimes referred to as the "act for the simplification of criminal pleading." *Commonwealth* v. *Diamond,* 248 Mass. 511, 516. As to

stubborn children the statutory form is: "That A. B., a minor, during the three months next before the making of this complaint, was a stubborn child, and stubbornly refused to submit to the lawful and reasonable commands of C. D., whose commands said A. B. was bound to obey."

The elements of the crime which was established by the Colonial law of 1654 and which is now simply identified by use of the words "stubborn children" in G. L. c. 272, § 53, are ascertainable upon examination and consideration of the entire series of statutes on the subject. The 1654 statute made criminal the disobedience by children and servants toward their parents, masters, and governors. After 245 years of experience with that statute and its successor statutes dealing with stubborn children, the Legislature in 1899 enacted a simplified form of complaint for this crime and it has now been in use for about seventy-two years.

The elements which the Commonwealth is required to prove beyond a reasonable doubt in order to constitute the crime commonly identified by use of the words "stubborn children" are the following: (a) that a person having authority to give a child under the age of eighteen lawful and reasonable commands which such child is bound to obey gave such a command to a child; (b) that the child refused to submit to the command, and the refusal was stubborn in the sense that it was wilful, obstinate and persistent for a period of time. The person giving the command is usually one of the child's parents, but it may be another person, as it was in this case. The defendant does not question that such other person, on the particular facts of this case, occupied such a position toward the defendant that he was authorized to give her lawful and reasonable commands which she was bound to obey. Single, infrequent or isolated refusals to obey such commands do not constitute a crime. Neither do manifestations of stubbornness which do not amount to refusals to obey commands. The law clearly does not make mere expressions of disagreement or differences of views or opinions between parent and child a crime on the part of the child. But it does not permit or

excuse stubborn refusals by children to obey reasonable and lawful commands of their parents or persons similarly situated on a claim that it is merely the exercise of a right of dissent.

2. The defendant argues further that it is beyond the limits of the police power of the Commonwealth to make laws for the punishment of stubborn children for the reasons (a) that they punish children for disobeying commands having only moral, but not legal sanctions, and (b) that they constitute an impermissible intrusion into the privacy of family life.

The fact that a child is under a moral obligation to obey his parents does not preclude the Legislature, in the exercise of its police power, from making that same obligation a legal one, with criminal penalties for its breach. It has never been contended, nor can it be properly contended, that because it is morally wrong to steal or to do harm to the person of another, or to kill him, the Legislature is without power to make such conduct a crime and to prescribe penalties for the crime.

The argument that a law for the punishment of children who stubbornly disobey their parents is unconstitutional because it is an impermissible intrusion into the privacy of family life is without merit. While "[i]t is cardinal . . . that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations . . . [in] the private realm of family life which the state cannot enter," such as religious teaching to children, "the family itself is not beyond regulation in the public interest." *Prince* v. *Massachusetts*, 321 U. S. 158, 166, affirming *Commonwealth* v. *Prince*, 313 Mass. 223. The rights and obligations of members of families in relation to each other have been regulated by laws for centuries. 1 Blackstone, Commentaries (9th ed.) 446–454. In that time the law has always imposed a duty upon parents to support, provide for and protect the children they bring forth. This is an obligation which they owe to their children, but its breach is also a crime against

society.   In more recent times the law in this regard has
been expanded to include the obligation to provide educa-
tional guidance.  G. L. c. 273, § 1.   To enable the parents
to discharge that responsibility, the law gives them the cus-
tody of and right of control over their children.   That car-
ries with it the power to exercise whatever authority is
reasonably necessary for the purpose, and to make all
reasonable decisions for the control and proper functioning
of the family as a harmonious social unit.   *Roe* v. *Doe,*
36 App. Div. 2d (N. Y.) 162.   It permits the parents to give
reasonable commands to their children and to require the
children to obey those commands.   The children in turn
owe the parents an obligation to acknowledge and submit
to their authority and to obey their reasonable and lawful
requests and commands.   In short, the governing authority
for the proper operation, control and discipline of the family
unit is vested in the parents.

While the State defers to the parents with respect to most
decisions on family matters, it has an interest in insuring
the existence of harmonious relations between family mem-
bers, and between the family unit and the rest of the public
society.   To protect this interest, the State may properly
require that unemancipated children obey the reasonable
and lawful commands of their parents, and it may impose
criminal penalties on the children if they persistently dis-
obey such commands.   The State is not powerless to pre-
vent or control situations which threaten the proper func-
tioning of a family unit as an important segment of the
total society.   It may properly extend the protection of its
laws in aid of the head of a family unit whose reasonable
and lawful commands are being disobeyed by children who
are bound to obey them.   The making of such laws is
within the power of the Legislature "to make, ordain, and
establish, all manner of wholesome and reasonable orders,
laws, statutes, and ordinances, directions and instructions,
either with penalties or without; . . . as . . . [it] shall
judge to be for the good and welfare of this commonwealth,
and for the government and ordering thereof, and of the

subjects of the same." Part II, c. 1, § 1, art. 4, of the Constitution of Massachusetts.

A substantial portion of the defendant's brief is devoted to the statement of facts and arguments of a sociological nature criticizing our present statutes governing proceedings against juvenile offenders, criticizing the physical facilities available for the detention of such offenders, and suggesting that many of the children confined in such facilities do not belong there. It also suggests that stubbornness in a child "may be symptomatic of a psychological defect in the child or inadequacy in the parent or both." Arguments of this type are not relevant to the legal issues presented for our decision. They would be more appropriate if addressed to the Legislature which has the power to change the statutes if it is persuaded that such changes are needed. We do not have that power.

3. The only remaining issue raised [2] is whether the evidence was sufficient, if believed, to constitute proof of the elements of the offence charged in the complaint. We hold that it was. In its light most favorable to the prosecution, the evidence permitted the trial judge, sitting without jury, to find the following facts. The defendant lived at the Deaconess Home where the complainant, Michael T. Walsh, was employed. On May 2, 1969, the defendant was to see a doctor for a complete physical examination and she refused to do so. On that same occasion she became a little angry, slammed a few doors, and refused to obey the request of the house mother not to slam doors and not to

[2] The defendant's brief contains an argument that because the proceedings against her were brought under G. L. c. 119, §§ 52–59, rather than under §§ 24–29 of the same chapter, she was denied the equal protection of law. It is not shown by the record before us that this question was raised before the trial judge but, if it was, it is without merit. Sections 24–29 relate to children who because of the death, absence, unavailability, incompetence or neglect of parents or guardians are in need of care, and they authorize the placing of such children in the custody of the Department of Public Welfare. By contrast, proceedings under §§ 52–59 are brought against children who are alleged to be delinquent by reason of their own misconduct in violating one of the criminal laws. This different treatment of children under the different sections of the statute is based on a reasonable distinction between those in need of care by reason of parental default or neglect, and those in need of discipline by reason of their own violation of a criminal law. This does not violate the defendant's constitutional right to the equal protection of law.

swear. At a staff meeting of the home the defendant was placed in group 4 which is a nonprivilege group. On several occasions she was away from the home with knowledge that she should have been at the home. At some time she was outside the home, probably talking with the boys, and she knew she was not to be outside the home. She had several temper outbursts during which she would not respond to commands of the house parents. On May 2, 1969, and on other occasions she used vile and vulgar language of a kind formerly used only by common railers engaged in gutter brawls. It need not be spread on our permanent records. That language was used at times contemporaneously with the defendant's disobedience of the orders of those in charge of the home and it forms a part of the setting in which the disobedience occurred. The evidence was sufficient to support the finding of the judge that the defendant was delinquent by reason of her stubborn refusal to submit to the lawful and reasonable commands of a person whose commands she was bound to obey.

*Exceptions overruled.*