COMMONWEALTH *vs.* LINDA M. BLAVACKAS.

Worcester.   March 10, 1981. — April 28, 1981.

Present:   GRANT, CUTTER, & BROWN, JJ.

*Idle and Disorderly Person.   Dangerous Weapon.   Words,* "Disorderly person."

At the trial of a complaint charging the defendant with being a disorderly person under G. L. c. 272, § 53, the judge erred in overemphasizing in his charge the extent, if any, to which the "disorderly persons" provision of § 53 has application to sexual conduct and in giving no attention to the redefinition of the "disorderly persons" provision as set forth in *Alegata* v. *Commonwealth,* 353 Mass. 287 (1967).   [748-752]

A complaint under G. L. c. 269, § 10(*b*), charging a defendant with carrying on her person or under her control in a motor vehicle a dangerous weapon, which was in fact a kitchen bread knife which had been found in the defendant's handbag, was inadequate on its face where it disclosed that the defendant was not arrested upon a warrant and made no allegation that, when she was arrested, she was committing a breach or disturbance of the public peace.   [752-753]

COMPLAINTS received and sworn to in the Central Worcester Division of the District Court Department on July 26, 1979.

The cases were tried before *George,* J.

*Ellen A. Howard* for the defendant.

*William E. Loughlin,* Assistant District Attorney, for the Commonwealth.

CUTTER, J.   The defendant was convicted before a jury of six in a District Court of various offenses.   Three were drug related (from which no appeal has been claimed).   The other offenses, alleged to have taken place on July 26, 1979, were (a) being a disorderly person, G. L. c. 272, § 53, as amended through St. 1973, c. 1073, § 20,[1] and (b) carry-

_____

[1] Section 53, as thus amended, reads:   "*Common night walkers,* both male and female, common railers and brawlers, persons who with offen-

ing without authority "on his [sic] person or under his [sic] control in a motor vehicle a dangerous weapon," G. L. c. 269, § 10(b), as appearing in St. 1975, c. 585, § 1.[2] Testimony from members of the Worcester police "vice-squad" permitted the following findings.

Two police officers, in each of two unmarked cruisers, saw the defendant about midnight walking on Piedmont Street, a two-lane street in Worcester. They (one with the assistance of binoculars) observed her from a distance of 200 to 300 feet for about twenty-five minutes, as she stopped with hand signals four automobiles, each with a lone male operator. She engaged each operator in conversation for about a minute. Other traffic in significant volume was forced to go around the stopped automobiles. She stopped a fifth automobile near the intersection of Murray Avenue and Piedmont Street. After a brief conversation between her and the vehicle's operator, this vehicle was driven onto

---

sive and disorderly act or language accost or annoy persons of the opposite sex, *lewd, wanton and lascivious persons* in speech or behavior, *idle and disorderly persons, prostitutes, disturbers of the peace,* keepers of noisy and disorderly houses and persons guilty of indecent exposure may be punished by imprisonment in a jail or house of correction for not more than six months, or by a fine of not more than two hundred dollars, or by both such fine and imprisonment" (emphasis supplied).

[2] Section 10(b), as thus amended, reads in part: "(b) Whoever, except as provided by law, carries on his person, or carries on his person or under his control in a vehicle, any *stiletto, dagger, dirk knife, any knife having a double-edged blade, or a switch knife, or any knife having an automatic spring release device* by which the blade is released from the handle, having a blade of over one and one-half inches, . . . or *whoever, when arrested upon a warrant for an alleged crime, or when arrested while committing a breach or disturbance of the public peace, is armed with or has on his person, or has on his person or under his control in a vehicle, a billy or other dangerous weapon other than those herein mentioned and those mentioned* in paragraph (a) [certain firearms] shall be punished by imprisonment for not less than two and one-half years nor more than five years in the state prison, or for not less than six months nor more than two and one-half years in a jail or house of correction, except that, if the court finds that the defendant has not been previously convicted of a felony, he may be punished by a fine of not more than fifty dollars or by imprisonment for not more than two and one-half years in a jail or house of correction" (emphasis supplied).

Murray Avenue where it stopped. The defendant entered the vehicle, which then went into a driveway near number 8 Preston Street. The officers left their cruisers and proceeded on foot down Preston Street. They found the defendant and the male operator of the vehicle fifty feet from the street "on the right side of . . . 8 Preston Street, on the lawn area." That wooden house, three stories high, "appeared to be" occupied. After some quiet conversation, she started to remove the man's trousers and they were "[a]round his knees" when the police reached the area. The police put the defendant under arrest as "a disorderly person" and gave her a *Miranda* warning. They found in her handbag, large enough to "carry half a dozen grapefruit in it," what appeared to be a small kitchen bread knife with a blade eight inches long and some drugs and drug equipment, including a hypodermic needle, a syringe and a "bottle cap cooker". Before the defendant entered the automobile, and after she left it, she was not heard to yell or scream. She did not run into the street in front of any vehicle to stop it. No automobile stopped on Preston Street while the arrest was going on and no one called out from the house.

1. On the "disorderly person" complaint, defense counsel made objection only to the judge's instruction to the effect "that soliciting sexual contact or conduct would amount to the crime of disorderly person". He also had instructed that "[a]ctive solicitation of illicit sexual activity has been termed . . . disorderly" and that "[s]exual conduct in public [as opposed to such conduct in private] has been termed disorderly". He further said that such conduct, if "done in a public place, in a public manner . . . could be, if you should so decide, disorderly conduct".

"[D]isorderly persons", as used in G. L. c. 272, § 53, as amended through St. 1973, c. 1073, § 20, has been strictly construed to preserve it from the defect of unconstitutional vagueness (see *Alegata* v. *Commonwealth,* 353 Mass. 287, 303-304 [1967]) by incorporating in it by reference the provisions of the Model Penal Code § 250.2, at 223

(Proposed Official Draft, 1962), now found in Model Penal Code, Part II, at 324 et seq. [1980]).[3] As so interpreted, it is not primarily, if at all, directed at offensive sexual conduct and indeed the instances of its recent application have been in Massachusetts largely confined to intentional conduct, usually somewhat violent, which tends to "disturb the public tranquility, or alarm or provoke others". See *Alegata, supra* at 304; *Commonwealth* v. *A Juvenile,* 368 Mass. 580, 582, 592, 597-598 (1975, dealing with outbursts of violent and abusive language in a large department store, where § 53, as applied to speech less objectionable and less risk-creating than "fighting words," was held constitutionally overbroad); *Commonwealth* v. *Richards,* 369 Mass. 443, 446-448 (1976, force and violence against police officers, attracting a crowd). Compare *Commonwealth* v. *Orlando,* 371 Mass. 732, 734 (1977, prosecution under § 53 for the separate [see note 1, *supra,* and the *Orlando* case, *supra* at 732] crime of "disturbers of the peace"). There the evidence showed that the then defendant "hurled objects and verbally insulted individuals at approximately 11:45 P.M. near 'The Pub' in Walpole." Compare also *Commonwealth* v. *Jarrett,* 359 Mass. 491, 492, 497-498 (1971), where the complaints for disturbing the peace alleged that the defendants did so by "making loud noises and outcries and . . . uttering in a loud tone, threatening, abusive, profane, indecent, and violent

---

[3] As appearing in the 1962 Proposed Official Draft, the section reads: "Section 250.2 Disorderly Conduct. (1) *Offense Defined.* A person is guilty of disorderly conduct if, with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (a) engages in fighting or threatening, or in violent or tumultuous behavior; or (b) makes unreasonable noise or offensively coarse utterance, gesture or display, or addresses abusive language to any person present; or (c) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor. 'Public' means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, or any neighborhood."

language and . . . striking . . . grievous blows at divers persons."

In *Commonwealth* v. *Templeman,* 376 Mass. 533, 537 (1978), "lewd, wanton and lascivious persons" in § 53 was "limited to 'public' conduct in the same sense as the 'disorderly persons' provision." The opinion points out that Massachusetts "decisions have sometimes blurred the distinctions between the various categories [in § 53] and [that] 'idle and disorderly' has sometimes been equated with 'lewd, wanton and lascivious.'" *Id.* at 536-537. See *Commonwealth* v. *A Juvenile (No. 2),* 6 Mass. App. Ct. 194, 196-197 (1978).

Consideration of the propriety of the trial judge's charge concerning the "disorderly person" complaint is further complicated by the fact that § 53 contains a specific penalty (added by St. 1959, c. 304, § 1, on the basis of 1959 House Doc. Nos. 1967 and 2797) for "prostitution," an offense not included in the present complaint. This 1959 provision, like other offenses mentioned in § 53, "does not create or define [a] new crime . . . but rather prescribes penalties for the commission of acts previously recognized as criminal offenses." *Commonwealth* v. *King,* 374 Mass. 5, 11-12 (1977). Nevertheless, the 1959 enactment suggests that sexual solicitation and prostitution (and conduct from which the latter may be inferred) properly should be prosecuted under the 1959 provision rather than under the "disorderly persons" provision, which (as redefined in the *Alegata* case) seems to require proof at least of significant risk of violence or serious disturbance. See *Commonwealth* v. *Templeman,* 376 Mass. at 537, where it was said "with respect to a 'disorderly person' charge . . . [there must be] a purpose to cause 'public' inconvenience, annoyance, or alarm, or . . . reckless creation of a risk thereof." In the circumstances of the present case, these conditions (if they existed at all) were not fully satisfied, and the ultimate arrest was not shown to have been "in a place to which the public or a substantial group has access."

Framing an adequate and accurate charge under any one of the discrete (but sometimes overlapping) offenses men-

tioned in § 53 is not an enviable assignment for any trial judge. Section 53 has been much amended. It deals with a considerable number of less important offenses, most if not all of which are defined only by the common law. See *Commonwealth* v. *Brasher,* 359 Mass. 550, 554-555 (1971). The section in recent years has been limited and indeed altered, by judicial decisions, some of which have involved constitutional considerations. The section obviously is badly in need of careful legislative attention and comprehensive revision and rearranging.

The trial judge's task is rendered particularly difficult when defense counsel fail to file written requests for instructions and make imprecise objections to the judge's charge as given. Probably, also, the trial judge would have been greatly assisted in framing an appropriate charge (or in making a suitable disposition of the two complaints here discussed) if defense counsel had filed, and argued intelligibly, motions for required findings. Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979). With full recognition of the matters just mentioned, we conclude that the charge in the present case inadequately defined the current content of the offense of being a "disorderly person", even when the charge is viewed as a whole.[4] The language from the charge already quoted unduly emphasized the extent, *if any,* to which the "disorderly persons" provision, under our case law, has present application to sexual conduct. We lay emphasis on the circumstance that no complaint was before the trial court under the "common night walkers," the "lewd, wanton, or lascivious persons," or the "prostitutes" portions of

[4] In addition to the portions of the charge already quoted, the trial judge said of the relevant part of § 53, "That is based on a statute that comes down to us from colonial times. It has been . . . interpreted and reinterpreted because it is a sort of a catch-all statute . . . . It covers lots of different types of conduct that goes against the good order of the community . . . . The particular charge that this defendant is being charged with here is what is called a disorderly person. The Supreme Court has said that a disorderly person is one who tends to disturb the public, who does things that upset the normal good order of our society, that provokes people, that causes alarm, that is the kind of thing."

§ 53.[5]  There is no occasion to decide whether the evidence would have supported a conviction on any one or more of these elements of § 53.  The judge's charge also gave no attention to the part of the *Alegata* case, 353 Mass. at 304, redefining the "disorderly persons" provision of § 53 in terms of § 250.2 of the Model Penal Code.  See note 3, *supra*.[6]  The conviction under § 53 must be reversed.

2.  We turn to the complaint under G. L. c. 269, § 10(*b*) (see note 2, *supra*), against the defendant for carrying on her person or under her control in a motor vehicle a dangerous weapon.  The Commonwealth concedes that the knife found in the defendant's large handbag is not a type of knife which always constitutes a dangerous weapon as specified in the opening lines of G. L. c. 269, § 10(*b*).  See *Commonwealth* v. *Appleby*, 380 Mass. 296, 303-308 (1980). Consequently, carrying this knife (even though it could inflict a nasty puncture wound) would not warrant a prosecution under § 10(*b*) unless the defendant was armed with it or had it on her person, or had it on her person or under her control in a vehicle, (a) "when arrested upon a warrant for" crime, or (b) "when arrested while committing a breach or disturbance of the public peace."  The complaint on its face discloses that the police had no warrant for the defendant's arrest, but does not allege that, when she was arrested, she was "committing a breach or disturbance of the public peace."  This is a necessary element of any crime under § 10(*b*) involving this knife.  The complaint is inadequate on its face for it does not charge any crime.

─────────

[5] No assistance is derived (in defining the crime here discussed) from the form of complaint suggested in G. L. c. 277, § 79, for use in prosecuting the offenses of being an "idle and disorderly person."  Compare *Thomes* v. *Commonwealth*, 355 Mass. 203, 205-206 (1969); *Commonwealth* v. *Brasher*, 359 Mass. 550, 554-555 (1971).  The suggested form of complaint bears no close resemblance to the offense as redefined in the *Alegata* case.

[6] Indeed, that redefinition casts serious doubt on whether the "disorderly persons" portion of § 53 now retains any element of prohibition of sexual misconduct (where all such conduct is dealt with in other sections of the Model Penal Code).

Certainly the defendant could not have been prosecuted under § 10(*b*) for carrying this knife on her person, or on her person or under her control in a vehicle, for an innocent purpose (e.g. to cut bread at a picnic). The trial judge should have ruled to this effect, even in the absence of a request for a required finding under Mass.R.Crim.P. 25(*a*).

In view of this conclusion, there is no occasion to consider whether the trial judge gave an adequate charge on what constitutes a breach or disturbance of the peace. See the *Orlando* case, *supra* at 734-735.

The judgments in both cases are reversed. In the case under § 10(*b*), a judgment also is to be entered for the defendant.

*So ordered.*