Shubow, J.
This report involves the claim of a father, respondent in an interstate child support proceeding under G.L.c. 273A, that the trial judge’s order required him to make support payments that would violate his sincerely-held religious beliefs. We conclude that the judge’s rulings were consistent with prevailing law in that the obligations of parents to provide child support and the state’s interest in seeing that children receive such support transcend any religious tenets adhered to by the appellant.
Summarizing the findings made by the trialjudge, it appears that the parties were married in New Hampshire in 1969. There were three children, all minors at the time of trial. The parties were divorced in 1981 in a “no fault” proceeding in New Hampshire; the wife received custody and a support order of $99 per week.
Immediately prior to the divorce in 1981, when the defendant in a business post was earning $22,000 per year, he underwent a religious experience, gave up his career, and became a full-time Bible student and later religious teacher. From that time forward, the defendant consistently asserted that his religious beliefs interdicted any support payments. By 1985, he had accumulated an arrearage under the New Hampshire decree of over $20,000.
The trialjudge considered the religious beliefs to be sincere. We repeat the trial judge’s summary of these beliefs, not because we sit in judgment upon them nor dispute them (see United States v. Ballard, 322 U.S. 78 [1944]) but simply to place the defendant’s position in context:'
Stated in a nutshell, the religious belief consists of the fact that divorce can only be for adultery, not no fault; that remarriage of one of the parties results in a sinful and adulterous relationship and the *28 essence of this belief is that he cannot contribute to his children where his support would contribute to the environment of his former wife.
The defendant did, however, indicate he could, within his system of belief, support his children if he was exercising custody of them. If he was given custody he would find the means to provide support.
The defendant made the following requests for rulings of law:
1. Sincere religious beliefs burdened by state requirements.
2. Nature and form of state interest, to include whether it is in least restrictive form.
3. State interest is religious in nature, so there is preference for state religion over defendant’s religion, violating Establishment Clause provisions of Massachusetts and United States Constitutions.
4. It is against public policy to enforce New Hampshire support order when defendant’s religious beliefs are burdened substantially with less than compelling state interest and when state interest is not in its least restrictive form.
5. Defendant’s free exercise rights undér United States and Massachusetts Constitutions made duty of support and determination of present ability to pay unconstitutional as applied.
6. Defendant’s Equal Protection rights are violated by state’s (New Hampshire and Massachusetts) requirement that defendant provide support in this case.
7. GAL’s report shows preference for Mary Lou Branowski’s religion.
The trial judge correctly denied each of them.[1]
We resolve the claims of the defendant by recitals of the legal principles now firmly in place. The activities of individuals even when religiously based are often subject to state regulation in the exercise of its undoubted power to promote the health, safety and general welfare. Wisconsin v. Yoder, 406 U.S. 205, 220 (1972). In Yoder (where the U.S. Supreme Court recognized the right of people of Amish persuasion to reject, on religious grounds, an additional two years of compulsory formal high school education) the court pointed out that there was no issue of “harm to the physical or mental health of the child or to the public safety, peace, order, or welfare” involved. The same cannot be said of as fundamental an issue as support.
The breach of the duty to support one’s children has been described as “a crime against society.” Commonwealth v. Brasher, 359 Mass. 550, 556-557 (1971). This duty of support follows the obligor wherever he may be located. Keene v. Toth, 335 Mass. 591, 593 (1957). The Commonwealth’s duty, as the “responding state” in this matter, is £o establish whether a duty to support exists, and, if so, to order support in a “reasonable amount.” G.L.c. 273A, § 10. The district court has no statutory authority under the act to alter a custody decree of a sister state. URESA is not intended to permit either spouse to relitigate a custody decree issued by a court with proper jurisdiction. “To hold otherwise would be to ignore completely the needs of the child and allow him to be a victim of circumstances beyond his control.” Souza v. Kokoszka, 36 Mass. App. Dec. 199, 206 (1965). The defendant offers no legally permissible less restrictive means of assuring support, and the lower court properly held there was none. The district court was not authorized to disturb the custody *29 determinations of the New Hampshire Superior Court. See the Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A, 94 Stat. 3569. The report discloses the defendant has already unsuccessfully challenged the New Hampshire custody judgment in that forum on what appears to be the same religious ground asserted here.
The defendant also argues that enforcing the support decree would violate the Establishment Clause provisions of the Massachusetts and United States Constitutions. The defendant claims that the Commonwealth is preferring one religion over another if it requires him to provide child support.
To justify state action against an Establishment Clause attack, the action must have a secular purpose, a primary secular effect, and the absence of excessive entanglement with religious practices. Lemon v. Kurtzman, 403 U.S. 602, 612-613 (1971). The Commonwealth’s decision to require a father to support his minor children clearly has a secular purpose. If the government’s action is classified as non-secular merely because it conflicted with the beliefs of one religion, almost all legislation would fall to an Establishment Clause attack. The duty to support does not.have a primary effect of inhibiting or advancing a religion. The Commonwealth’s decision whether to order support, and the amount to order, does not influence the pursuit of religious beliefs in any more than the most tangential and insignificant way. The trial judge reviewed the evidence in establishing the $99 a week amount but did not pass upon the religious beliefs involved. Nor is there any evidence that the support legislation requires any greater “entanglement” with organized religions than any other type of legislation.
The defendant also asserted that his Equal Protection rights under the Fourteenth Amendment to the United States Constitution, and under the Massachusetts Constitution Part 1, Arts. 1, 2, are violated by the support order.
The defendant claims that he is being denied Equal Protection in this case because he is being treated differently than others similarly situated. He argues that, unlike other religious persons, he is being denied the right to follow his beliefs and calling by the support requirement.
It seems clear that this is merely a restatement of his position that by reason of his religious beliefs he should be exempt from duties imposed on all other parents. The defendant has not cited a single case in the vast jurisprudence involving issues of church and state in which a parent has been relieved for reasons of personal faith from the common duty of support. For a court to validate his claim would indeed be to prefer his religion above all others, a course which we shall not adopt.
Finally, the defendant argues vehemently (and without legal basis before us) that he lacks capacity to meet the support order. But he did not challenge the sufficiency of the evidence before the trial judge. We are satisfied from examination of the full report that the finding was warranted. See Bushnell v. Bushnell, 1987 Mass. App. Div. 181, 183.
This case is merely one example of the general rule that when the state is acting in the role of parens patriae it does so on the premise that a biological parent is not clothed with life and death authority over his own children. See Custody of A Minor (No. 3), 378 Mass. 732, 744 (1979). No organized society could permit parental withholding of food and sustenance from children on the basis of a private belief system, religious or otherwise.
There being no error, the report is dismissed.

 We do not pause to point out the obvious unclarity in the form in which most of the requests were couched but have sought to look through the awkwardness of expression to the underlying legal claim so far as we can discern it. Request 7 refers to guardian ad litem report used in New Hampshire proceedings. The document was apparently tendered in evidence by the defendant.