COMMONWEALTH *VS.* EUGENE B. TURNER.

No. 02-P-178.

Suffolk. May 15, 2003. - November 5, 2003.

Present: GRASSO, McHUGH, & MILLS, JJ.

*Dangerous Weapon. Arrest. Practice, Criminal,* Property seized at time of arrest.

The evidence at the trial of a criminal complaint was insufficient to convict the defendant of possession a dangerous weapon when arrested on a warrant, in violation of G. L. c. 269, § 10(*b*), where the defendant's knife, a common black folding knife with a three and one-quarter inch serrated blade that was not a dangerous weapon per se, was folded in his pocket at all times, and where the defendant did not use it in a manner that was capable of causing serious harm or even the apprehension of harm at the time of his arrest. [827-831]

COMPLAINT received and sworn to in the Boston Municipal Court Department on April 2, 2001.

A pretrial motion to suppress evidence was heard by *Thomas C. Horgan,* J., and the case was heard by *John T. Lu,* J.

*Lisa Siegel Belanger* for the defendant.

*Stacy J. Silveira,* Assistant District Attorney, for the Commonwealth.

McHUGH, J. After stopping the defendant in Boston's "Combat Zone" in the early hours of a weekday morning, police removed from his back pocket a folded knife with a three and one-quarter inch serrated blade. When police learned that there were outstanding warrants for the defendant's arrest, they arrested him on those warrants and, in addition, charged him with violating G. L. c. 269, § 10(*b*), which prohibits, among other things, possession of a dangerous weapon when arrested on a warrant. Later, the defendant's motion to suppress the knife was denied and, following a jury-waived trial, he was convicted of

violating the statute. He appeals, claiming that his motion to suppress was improperly denied, that he did not possess a "dangerous weapon" within the meaning of the statute, and that, under the circumstances of this case, conviction for violating the statute would violate his right to due process of law.[1] We conclude that the evidence at trial was insufficient to prove a violation of the statute and, therefore, vacate the defendant's conviction.[2]

Viewed in the light most favorable to the Commonwealth, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), the relevant facts are these. In the early morning hours of April 2, 2001, Officer Al Young was on routine patrol in the "Combat Zone" area of downtown Boston. At approximately 2:25 A.M., he saw a white Ford automobile turn from Washington Street onto Beach Street, a one-way street, in the wrong direction. Officer Young turned on his flashing lights. In response, the Ford promptly stopped, and Officer Young got out of his cruiser to approach the vehicle. As he did, the defendant, who was a front seat passenger, got out of the car and began to walk quickly back in the direction from which the car had come, ignoring Officer Young's demand that he return to the vehicle.

Upon seeing the defendant depart, Officer Young radioed for assistance, told the Ford's driver to turn off his engine and remain in the car, and then set off on foot in pursuit of the defendant. Another police cruiser quickly arrived and pulled alongside the defendant as Officer Young drew near. Seeing the approaching officers, the defendant stopped, told the officers that he had nothing "on him" and that they could search him. In response, Officer Young pat frisked the defendant and discovered a closed black folded knife in the rear pocket of the defendant's pants. The knife was a common implement of a

---

[1]The defendant also claimed that he received ineffective assistance of counsel owing to his attorney's failure to request a continuance when two expert witnesses he had retained to testify about the knife and its uses were unavailable on the trial date. After the appeal was filed, he sought to expand the record with factual material forming the basis for that claim. That motion was denied in the trial court. He then moved in this court to withdraw the claim of ineffective assistance and we allow that motion.

[2]Because we dispose of the case in this fashion, there is no need to consider the question whether the motion to suppress was properly denied.

type freely available for purchase in stores throughout the city of Boston.

After removing the knife from the defendant's pocket, Officer Young placed the defendant in his cruiser and asked him for his name. Young then "ran [the defendant's] name for warrants" and discovered outstanding warrants for the defendant's arrest. He arrested the defendant on those warrants and later charged him with violating G. L. c. 269, § 10(*b*). There was no evidence at trial of the nature of the offenses for which the warrants had issued nor was there any evidence that the defendant knew the warrants were outstanding.

Turning from facts to analysis, we agree that the evidence was insufficient to support the defendant's conviction. General Laws c. 269, § 10(*b*), essentially contains two separate provisions. The first prohibits possession of specifically defined weapons under any circumstances unless possession is specifically authorized by law. The defendant was not charged with violating that portion of the statute.

The second provision,[3] under which the defendant was charged, more broadly prohibits one from being "armed with or ha[ving] on his person, or . . . under his control in a vehicle, a . . . dangerous weapon other than those . . . mentioned [in the first provision of § 10(*b*)] and those mentioned in" § 10(*a*), which deals with firearms, "when arrested upon a warrant for an alleged crime."[4] The statute is designed to "discourage[] the carrying of dangerous weapons which can be used against arresting officers." *Commonwealth* v. *Thompson*, 15 Mass. App.

---

[3]"[W]hoever, when arrested upon a warrant for an alleged crime, or when arrested while committing a breach or disturbance of the public peace, is armed with or has on his person, or has on his person or under his control in a vehicle, a billy or other dangerous weapon other than those [listed earlier in § 10(*b*)] and those mentioned in paragraph (*a*), shall be punished by imprisonment for not less than two and one-half years nor more than five years in the state prison, or for not less than six months nor more than two and one-half years in a jail or house of correction, except that, if the court finds that the defendant has not been previously convicted of a felony, he may be punished by a fine of not more than fifty dollars or by imprisonment for not more than two and one-half years in a jail or house of correction."

[4]The second provision also contains a similar prohibition applicable "when [one is] arrested while committing a breach or disturbance of the public peace." The defendant was not charged with a breach of the peace.

Ct. 974 (1983). See *Commonwealth* v. *O'Connor*, 7 Allen 583, 584 (1863).

When not otherwise defined,[5] the term "dangerous weapon" embraces objects that are dangerous per se, i.e., objects that are "designed and constructed to produce death or great bodily harm" — objects, in other words, that are "designed for the purpose of bodily assault or defense," *Commonwealth* v. *Appleby*, 380 Mass. 296, 303 (1980) — and objects that are dangerous as used, i.e., "those things that become dangerous weapons because they are 'used in a dangerous fashion.'" *Commonwealth* v. *Tevlin*, 433 Mass. 305, 310 (2001), quoting from *Commonwealth* v. *Appleby*, *supra* at 304. "The essential question, when an object which is not dangerous per se is alleged to be a dangerous weapon, is whether the object, as used by the defendant, is capable of producing serious bodily harm." *Commonwealth* v. *Marrero*, 19 Mass. App. Ct. 921, 922 (1984).[6] See generally *Commonwealth* v. *Tarrant*, 367 Mass. 411, 415-417 (1975).

Straight knives typically are regarded as dangerous per se while folding knives, at least those without a locking device, typically are not. See *Commonwealth* v. *Appleby*, 380 Mass. at 303; *Commonwealth* v. *Monico*, 396 Mass. 793, 807 (1986); *Commonwealth* v. *Miller*, 22 Mass. App. Ct. 694, 696 (1986); *Commonwealth* v. *Henry*, 37 Mass. App. Ct. 429, 440 n.7 (1994). There was no evidence that the defendant's knife had a locking device. Both the trial judge and the Commonwealth properly placed the defendant's folding knife in the category of

---

[5]As is true in all cases where a phrase in a statute is not defined, we proceed with our analysis presuming that the Legislature "intended to incorporate the common law definition of that phrase, 'at least in so far as it is not inconsistent with the terms or purpose of the statute.'" *Commonwealth* v. *Ricardo*, 26 Mass. App. Ct. 345, 356 (1988), quoting from *Commonwealth* v. *Burke*, 390 Mass. 480, 484-485 (1983).

[6]"The standard definition of 'dangerous weapon' includes those items that are, by their nature, capable of causing serious injury or death, but also includes items that are used or displayed in a way such that they reasonably appear capable of causing serious injury or death," even if they in fact are not. *Commonwealth* v. *Powell*, 433 Mass. 399, 401 (2001). That principle, typically applied to fake weapons appearing to be real, see cases cited at *id.*, has no application to this case.

weapons that are dangerous as used, a position the Commonwealth maintains on this appeal.[7]

The question, therefore, is whether the evidence permitted the fact finder to conclude that the defendant used or handled the knife in a manner that made it a dangerous weapon. See *Commonwealth* v. *Appleby*, 380 Mass. at 305-306; *Commonwealth* v. *Tevlin*, 433 Mass. at 310-312. It did not. At all material times, the defendant's knife was out of sight, folded in his back pocket. It was folded in his back pocket as he distanced himself from Officer Young. It was folded in his back pocket when he told the officers, after he was stopped, that they could search him because he had nothing "on him." The officers were not even aware of its existence until they encountered it during the frisking process. Whatever the knife's potential for harm at other times and in other circumstances, the defendant did not use it in a manner that was capable of causing serious harm or even the apprehension of serious harm on the morning of his arrest. Compare, e.g., *Commonwealth* v. *Blavackas*, 11 Mass. App. Ct. 746, 752-753 (1981) (kitchen bread knife with a blade eight inches long found in the defendant's purse, although capable of supporting a conviction under G. L. c. 269, § 10[*b*], if the defendant were arrested on a warrant, would not have supported such a conviction if the defendant was carrying it "for an innocent purpose"); *Commonwealth* v. *Thompson*, 15 Mass. App. Ct. at 974 (steak knife with a "serrated blade eight inches long," which was found in the defendant's purse and which she said she intended to use "for her protection" was dangerous within the meaning of G. L. c. 269, § 10[*b*]); *Commonwealth* v. *Miller*, 22 Mass. App. Ct. at 696-697 (defendant's knife, which was a "heavy, oversized version of a folding pocket knife or

[7]The trial judge did find that the knife had "a three and a quarter inch serrated blade and on physical examination truly appears to be fairly lethal weapon, one capable of causing very, very serious injury or death." He also described the knife as "a small buck knife which is serrated. And it truly is a, it's a bit of a chilling kind of weapon because this is not intended for cutting steak. This is probably intended for hurting people. . . . [J]ust in looking at the knife itself . . . it doesn't have the innocent usage that a steak knife might have." However, there was no evidence, circumstantial or other, of the purpose for which the defendant carried the knife, compare, e.g., *Commonwealth* v. *Thompson*, 15 Mass. App. Ct. at 974, and any sharpened blade, serrated or straight, carries with it at least the potential for serious injury or death.

jack-knife" that did not open easily or quickly and was found closed in the defendant's pocket, "could have been deemed to be a dangerous weapon" under G. L. c. 269, § 10[*b*], if it had been found open in his hand or pocket); *People* v. *Brown*, 406 Mich. 215, 220 (1979) (weapon is dangerous if "used in a manner intended to inflict serious injury or carried for such use"). Consequently, the evidence was insufficient to support a conviction under a theory that the defendant's knife was dangerous as used.

The trial judge's contrary conclusion was based on the following analysis:

> "I find sufficient facts in short based on the . . . early morning hours in downtown Boston, Defendant has an extremely lethal knife in his pocket, is walking away from the police in a really suspicious manner, and I find that that is dangerous as used."

Generalizing that analysis, the Commonwealth asserts that § 10(*b*) is a possessory offense and that, when considering weapons like the defendant's that are not dangerous per se, " 'use' in the possessory context does not mean actual use of the weapon; rather it means carrying a weapon, while subject to arrest on an outstanding warrant, that could be used in a dangerous manner against the police."

Two insurmountable problems with that position immediately emerge. The first is the limitless nature of the construction the Commonwealth urges. If a "dangerous weapon" is any object that has the potential for harming the police while they are effecting an arrest, then the carpenter with her hammer, the plumber with his pipe wrench, the Sunday driver in an automobile, see *Commonwealth* v. *Cherubin*, 55 Mass. App. Ct. 834, 842 (2002), indeed, all but the shoeless, see *Commonwealth* v. *Tevlin*, 433 Mass. at 310-312, would find themselves beneath the statute's broad cover. We decline to adopt an interpretation that would produce such an absurd result. See generally *Commonwealth* v. *George*, 430 Mass. 276, 280 (1999); *Commonwealth* v. *Landry*, 438 Mass. 206, 208 (2002).

The second problem relates to the first. Due process requires "fair notice of proscribed conduct." *Commonwealth* v. *Clint C.*,

430 Mass. 219, 227 (1999). Common sense would suggest to one who uses an innocent object in a manner capable of causing death or serious injury, or in a manner that creates a reasonable apprehension of those results, that his conduct is of doubtful legality. But if the statute truly means that a "dangerous weapon" is any hammer, wrench, pocketknife, or other object with dangerous potential, regardless of how that object is used, then wholly innocent possession of the object will be criminalized by issuance of a warrant or, at least, by the warrant's execution.[8] Acceptance of the Commonwealth's position would, therefore, produce a statutory scheme with the potential for criminalizing otherwise innocent activity in a way that provides a defendant with no notice of his conduct's prohibited nature until after the crime had occurred. Such a scheme would clearly violate the first essentials of due process. For that reason, as well, we decline to construe the statute in the broad manner the Commonwealth urges. See *Adamowicz* v. *Ipswich*, 395 Mass. 757, 763-764 (1985).

*Judgment reversed.*

*Finding set aside.*

---

[8] In some cases, a person will have absolutely no idea that a warrant is outstanding. See, e.g., Mass.R.Crim.P. 5(d), 378 Mass. 851 (1979). Indeed, there was no evidence in this case that the defendant knew the warrants had issued. As noted, the record does not reveal the nature of the warrants. There was a hint, albeit not evidentiary, that several may have been issued in connection with unpaid fees.