COMMONWEALTH VS. KENNETH M. LOPIANO.

No. 03-P-346.

Essex. February 3, 2004. - March 29, 2004.

Present: GELINAS, DUFFLY, & TRAINOR, JJ.

*Assault and Battery. Idle and Disorderly Person.*

The evidence at the trial of a criminal complaint was insufficient to convict the defendant of disorderly conduct, where the defendant's conduct in flailing his arms and shouting did not constitute violent or tumultuous behavior. [725-726]

At the trial of a criminal complaint charging assault and battery, any misstatement of the prosecutor in referring to the defendant's grabbing of the victim's hair and jerking her head as pulling at her neck did not create a substantial risk of a miscarriage of justice. [726-727]

COMPLAINT received and sworn to in the Haverhill Division of the District Court Department on February 12, 2002.

The case was tried before *Allen G. Swan,* J.

*Theodore F. Riordan* (*Deborah Bates Riordan* with him) for the defendant.

*James A. Janda,* Assistant District Attorney, for the Commonwealth.

DUFFLY, J. The defendant appeals from convictions of assault and battery, G. L. c. 265, § 13A, and disorderly conduct, G. L. c. 272, § 53, following a jury trial. He argues that the evidence was insufficient to convict him of the disorderly conduct charge and that his motion for a required finding of not guilty should not have been denied. He also argues that the judge's instructions as to the disorderly charge were deficient and that the prosecutor made improper argument with respect to the assault and battery charge, entitling him to a new trial.

The jury could have found that in the early morning hours of February 12, 2002, at 1:45 A.M., as State police Trooper Steven

O'Connor drove in his police cruiser by the Best Western Motel parking lot in Haverhill he observed, in a parked vehicle near the front lobby, a male in the front passenger seat and a female in the driver's seat. The male, later identified as the defendant, had his left hand on the female's hair and was "shaking her head, jerking her head back and forth." He also was "pointing at the female, and it [*sic*] appeared to be shaking his finger, and appeared to be yelling and screaming at the female operator." O'Connor turned his cruiser around and returned to the parked car. He exited his cruiser and, as he approached the parked car, O'Connor saw the male continuing to point at and shake the woman's head. He could hear "yelling" through the closed windows, but he could not make out the words. He saw the woman's face and, in his opinion, the woman, who did not appear to be saying anything, looked afraid. He approached the driver's side of the car, illuminating the interior with his light; the defendant released the woman and O'Connor "removed her from the vehicle." She was trembling and appeared to be frightened and on the verge of tears.

At some point, Mark Garrett, a Haverhill police officer, also arrived on the scene. The woman identified herself to the officers as Susan Carins. She said that she and the defendant knew each other and had come to the motel from another bar to have drinks, and that she did not want the officers to arrest the defendant. Garrett asked the defendant to exit the vehicle. As the defendant was getting out of the car, he "kept saying no problem here, no problem here, everything is all set, no problem." The police advised the defendant that he would be summonsed to court for assault and battery, that he was not to be arrested at Carins's request, and that he had to leave the motel parking lot. He began to walk away. O'Connor testified: "He took a few steps from me, ten steps, turned around, began flailing his arms, yelling that I was violating his civil rights." He was advised a second time to leave, and the defendant was "yelling at me, you're violating my civil rights, then he began yelling at Ms. Carins, why are you doing this to me, you'll never go through with this." At that time, he was placed under arrest. It is not disputed that only the defendant's conduct after he left the car forms the basis of the disorderly conduct charge.

"The statute authorizing prosecutions for disorderly conduct, G. L. c. 272, § 53, has been saved from constitutional infirmity by incorporating the definition of 'disorderly' contained in § 250.2(1)" of the Model Penal Code (1980). *Commonwealth v. Mulvey*, 57 Mass. App. Ct. 579, 582 (2003). "What now remains of the definition of 'disorderly' conduct is subsections (a) and (c) of § 250.2 of the Model Penal Code . . . ." *Commonwealth v. Sholley*, 432 Mass. 721, 728 (2000), cert. denied, 532 U.S. 980 (2001).[1] The defendant argues that the evidence was insufficient to establish either that the area was public or that his conduct was tumultuous.

We reject his contention that the evidence — the events took place in a motel parking lot "right off the highway," twenty to twenty-five feet from "the front lobby office area" of a "crowded" and "busy" motel, "near a "Denny's type restaurant," shopping mall, and movie theater — fails "to establish that people could have seen or heard the defendant from any place of public access, such as a nearby sidewalk, publicly used path or road, shopping area or other neighborhood facility." *Commonwealth v. Mulvey*, 57 Mass. App. Ct. at 584.

We agree, however, that the evidence was insufficient to establish that the defendant had engaged in "violent or tumultuous behavior."[2] *Commonwealth v. Whiting*, 58 Mass. App. Ct. 918, 920 (2003). See note 1, *supra*. "To be disorderly, within the sense of the statute, the conduct must disturb through acts other than speech; neither a provocative nor a foul mouth transgresses the statute." *Commonwealth v. LePore*, 40 Mass. App. Ct. 543, 546 (1996). The Commonwealth argues that the defendant engaged in " 'tumultuous behavior' because he cre-

---

[1] The relevant provision of that section reads as follows: "A person is guilty of disorderly conduct if, with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (a) engages in fighting or threatening, or in violent or tumultuous behavior . . . . 'Public' means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, or any neighborhood." Model Penal Code § 250.2, at 324-325 (1980).

[2] The trial judge's instruction that the Commonwealth had to prove that the defendant "engaged in violent or tumultuous behavior" was consistent with the Commonwealth's argument, which did not rely on "fighting or threatening" conduct to prove its case.

ated a public nuisance by flailing his arms" and shouting. There is no claim that the defendant's loud protestations directed either at police[3] or at Carins constituted a threat of violence and no evidence that the defendant's "flailing arms" were anything but a physical manifestation of his agitation.[4] Tumultuous behavior is conduct which may be "characterized as involving riotous commotion and excessively unreasonable noise so as to constitute a public nuisance." *Commonwealth* v. *Sholley*, 432 Mass. at 729, quoting from *Commonwealth* v. *A Juvenile*, 368 Mass. 580, 597 (1975). Compare *Commonwealth* v. *Zettel*, 46 Mass. App. Ct. 471, 472 (1999). Here, the evidence does not support a reasonable inference that the "noise and commotion caused by [the defendant's] behavior was . . . extreme." *Commonwealth* v. *Sholley, supra* at 729.[5]

With respect to the assault and battery charge, the defendant claims that the statement by the prosecutor that Carins told the officer the defendant was "pulling at her neck" was not based on the evidence. Carins testified that the defendant had grabbed her hair and her head, and agreed that he had jerked her head back and forth. To the extent it may reasonably be argued that grabbing Carins's hair and jerking her head is significantly different from pulling at her neck, this misstatement did not create a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Bregnoli*, 431 Mass. 265, 277 (2000). With respect to both charges, the defendant's remaining claims, that statements by the prosecutor had no basis in the evidence, are likewise unavailing.

---

[3]Although comments provoked solely in response to police conduct arguably fall in a different category, see Model Penal Code § 250.2 comment 7, at 349-353, and cases cited, here the comments were also directed at Carins. Compare *Commonwealth* v. *Mulvey*, 57 Mass. App. Ct. at 584 ("police presence in and of itself does not turn an otherwise purely private outburst into disorderly conduct").

[4]The Commonwealth's reliance on *Commonwealth* v. *Mulero*, 38 Mass. App. Ct. 963, 963, 965 (1995), to support its position that the defendant's loud comments and flailing arms combined to form a sufficient basis to convict, is misplaced. In that case, we declined to consider the defendant's attack of the disorderly conduct conviction because it had been placed on file.

[5]We reject the defendant's claim, raised for the first time on appeal, that the judge should have been required to instruct the jury as to the meaning of the word "tumultuous," as used in the statute.

The judgment of conviction on the charge of disorderly conduct is reversed, the verdict is set aside, and that portion of the complaint is dismissed. The judgment of conviction on the charge of assault and battery is affirmed.

*So ordered.*