Commonwealth vs. Douglas Molligi.

No. 06-P-1427.

Middlesex. June 4, 2007. - September 10, 2007.

Present: Kantrowitz, Green, & Katzmann, JJ.

*Idle and Disorderly Person. Dangerous Weapon.*

At a criminal trial, the evidence was sufficient to establish beyond a reasonable doubt probable cause to arrest the defendant for disorderly conduct, where the arresting police officer observed the defendant standing on a public street with pedestrian traffic, holding a knife in his hand (conduct that had frightened at least one passerby), and the defendant then refused to stop or put his hands up at the officer's request. [109-112]

The evidence at a criminal trial was sufficient to support the defendant's conviction of possession of a dangerous weapon in violation of G. L. c. 269, § 10(*b*), where the nine-inch steak knife with a four-inch straight blade that the defendant publicly wielded constituted a dangerous weapon, and where all other elements of that crime had been established. [112-113]

COMPLAINT received and sworn to in the Lowell Division of the District Court Department on November 14, 2005.

The case was heard by *Mark A. Sullivan*, J.

*Derek T. Ho* for the defendant.

*Kate M. Kleimola*, Assistant District Attorney, for the Commonwealth.

KATZMANN, J. Following a bench trial in District Court, the defendant was convicted of disorderly conduct in violation of G. L. c. 272, § 53, and carrying a dangerous weapon in violation of G. L. c. 269, § 10(*b*). The judge sentenced the defendant to one year in a house of correction on the weapons charge. The disorderly conduct conviction was placed on file. The defendant now appeals on two grounds: (1) that there was insufficient evidence to support a finding of disorderly conduct; and (2) that there was insufficient evidence to support a finding that the defendant was carrying a dangerous weapon. We affirm.

*Background.* The sole witness at the bench trial was Officer Anthony Fenlon of the Lowell police department. Viewing the facts in the light most favorable to the Commonwealth, we summarize Officer Fenlon's testimony below. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979).

At approximately 2:30 A.M. on November 11, 2005, Officer Fenlon was on patrol in a marked cruiser on Central Street in Lowell. At that time, a pedestrian, who appeared anxious, alerted Fenlon to suspicious activity — a man holding a knife — further down Central Street. The statements caused Fenlon to drive in that general direction. Upon approaching the location, he observed a man, later identified as the defendant, standing on the corner of Central Street and Wright Street. The defendant appeared to be holding a knife in his right hand. Fenlon further observed that the defendant was located in an area of moderate pedestrian traffic with most persons exiting the surrounding bars and after-hours eating establishments.

Fenlon then approached the defendant, advising him to stop. The defendant instead ran in front of the cruiser, almost causing Fenlon to hit him, and then across the street and down a nearby street. Fenlon shouted at the defendant to stop, and then pursued him. During the pursuit, Fenlon observed the defendant attempting to put what appeared to be a knife in his pocket.

After a short chase, Fenlon got out of the cruiser, approached the defendant, and ordered him to put his hands up. The defendant did not obey Fenlon's command and appeared to be shuffling an indiscernible object in the front area of his person. As a result, Fenlon drew his weapon and repeated the order. The defendant surrendered. Fenlon handcuffed the defendant and proceeded to search him. The search revealed a knife in his front right pocket. The knife was admitted in evidence at trial.

*Discussion.* The defendant raises an issue of the sufficiency of the evidence on the disorderly conduct charge affecting his convictions for both disorderly conduct and carrying of a dangerous weapon. "Absent exceptional circumstances, we do not consider appeals on assignment of error on indictments placed on file since no appeal may come before us until after judgment, which in criminal cases is the sentence." *Commonwealth* v. *Delgado*, 367 Mass. 432, 438 (1975). "However, that general rule is

subject to a qualification in cases that present exceptional circumstances, such as where the legal error affects all charges and there is a commonality of effect flowing from the error." *Commonwealth* v. *Prashaw,* 57 Mass. App. Ct. 19, 27 (2003). See *Commonwealth* v. *Calderon,* 431 Mass. 21, 28 (2000) (improper exercise of peremptory challenge infected entire trial process); *Commonwealth* v. *Doe,* 8 Mass. App. Ct. 297, 298 n.1 (1979) (challenged issues were common to all indictments, including those placed on file); *Commonwealth* v. *O'Brien,* 30 Mass. App. Ct. 807, 807 n.1 (1991) (holding invalid search warrant pertained to both indictments).

Under the present circumstances, there is not necessarily a "commonality of effect" flowing from the alleged error on the disorderly conduct conviction placed on file, such as to affect the conviction of carrying a dangerous weapon, because, as we note *infra,* G. L. c. 269, § 10(*b*), requires in relevant part only that the defendant be "arrested while committing a breach or disturbance of the public peace."[1] As such, where as here there was no warrant, the Commonwealth need only prove, at a minimum, that the arrest was valid, or more particularly, that there was beyond a reasonable doubt probable cause to arrest the defendant for a breach or disturbance of the public peace. G. L. c. 269, § 10(*b*). We thus review the evidence relating to the defendant's disorderly conduct conviction only to determine whether the validity of the arrest was proven beyond a reasonable doubt.

"The statute authorizing prosecutions for disorderly conduct, G. L. c. 272, § 53, has been saved from constitutional infirmity by incorporating the definition of 'disorderly' contained in § 205.2(1)(a) and (c) of the Model Penal Code (1980)" (footnote omitted). *Commonwealth* v. *Mulvey,* 57 Mass. App. Ct. 579, 582 (2003). Thus, the definition of "disorderly" as set forth in G. L. c. 272, § 53,[2] includes only those individuals who, "with purpose to cause public inconvenience, annoyance or alarm, or recklessly

---

[1]General Laws c. 269, § 10(*b*), as amended by St. 1974, c. 649, § 2, provides in pertinent part: "[W]hoever, when arrested upon a warrant for an alleged crime, or when arrested while committing a breach or disturbance of the public peace, is armed with or has on his person or under his control in a vehicle a . . . dangerous weapon . . . shall be punished . . . ."

[2]The statute reads: "Common night walkers, common street walkers, both male and female, common railers and brawlers, persons who with offensive

creating a risk thereof . . . : (a) engage[] in fighting or threatening, or in violent or tumultuous behavior; or . . . (c) create[] a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." *Commonwealth* v. *Sholley*, 432 Mass. 721, 727 n.7 (2000), cert. denied sub nom. *Sholley* v. *Massachusetts*, 532 U.S. 980 (2001), quoting from § 250.2 of the Model Penal Code; *Commonwealth* v. *Chou*, 433 Mass. 229, 232 (2001); *Commonwealth* v. *Mulvey, supra* at 582. The "public" aspect of the conduct is defined as "affecting or likely to affect persons in a place to which the public or a substantial group has access." *Commonwealth* v. *Mulvey, supra,* quoting from *Commonwealth* v. *A Juvenile,* 368 Mass. 580, 586 (1975).

Here, Officer Fenlon observed the defendant standing on a public street, at approximately 2:30 A.M., holding a knife in his hand. Fenlon was aware that the defendant's conduct had frightened at least one passerby and that the knife-wielding defendant was positioned in a well-traveled area. Fenlon's additional investigation was warranted.

On the basis of these facts, the defendant's conduct — openly carrying a knife on a public street with pedestrian traffic, refusing Fenlon's order, and fleeing across a public street and down a side street — created a hazardous or physically offensive condition affecting the public.[3] See *Commonwealth* v. *Feigenbaum,* 404 Mass. 471, 475 (1989) (defendant's conscious disregard of police request to move created hazardous condition); *Commonwealth* v.

and disorderly acts or language accost or annoy persons of the opposite sex, lewd, wanton and lascivious persons in speech or behavior, idle and disorderly persons, disturbers of the peace, keepers of noisy and disorderly houses, and persons guilty of indecent exposure may be punished by imprisonment in a jail or house of correction for not more than six months, or by a fine of not more than two hundred dollars, or by both such fine and imprisonment." G. L. c. 272, § 53, as amended through St. 1983, c. 66, § 1.

[3]The judge found that the defendant's conduct was "likely to affect the public," that it "recklessly created a risk of public inconvenience, annoyance or alarm," and that it "created [a] hazardous or physically offensive condition." The defendant asserts that the judge solely relied on the knife possession as the basis of the disorderly conduct charge. We disagree with this characterization of the judge's findings or reasoning. In any event, the totality of the conduct, as discussed, created a hazardous or physically offensive condition with no legitimate purpose. See *Commonwealth* v. *Va Meng Joe,* 40 Mass. App. Ct. 499, 503 n.7 (1996), *S.C.,* 425 Mass. 99 (1997).

*Zettel*, 46 Mass. App. Ct. 471, 475 (1999) (failure to move illegally parked car at officer's request potentially created hazardous or physically offensive condition). See also *Abraham* v. *Nagle*, 116 F.3d 11, 14 (1st Cir. 1997) (noting Massachusetts cases where refusal to obey police orders created safety threat). Moreover, the defendant's carrying of the knife in a public area caused at least one passerby to become apprehensive and Fenlon to become concerned enough to ask the defendant to stop. This evidence supported an inference that the defendant's activity was causing public alarm. Lastly, the defendant's carrying of a knife on a public street and his flight at Fenlon's request support an inference that his actions had no legitimate purpose. See *Commonwealth* v. *Mulvey*, 57 Mass. App. Ct. at 582. His conduct contrasts sharply with those instances where our courts have determined that the defendant did have a legitimate purpose for his actions. See *Commonwealth* v. *Feigenbaum, supra* at 475 (defendant was participating in political protest); *Commonwealth* v. *Zettel, supra* at 475 ("[w]hile the Commonwealth's evidence that the defendant did not heed the officer's warning, failed to move her car, and illegally parked in a private driveway, warranted, perhaps, a finding that the defendant created 'a hazardous or physically offensive condition,' " defendant had legitimate purpose in picking up her young son when he was released from school). The witness thus provided sufficient basis for probable cause to arrest. As the defendant's conviction on this count was placed on file, we need not go further.[4]

The defendant also asserts that there was insufficient evidence in the record to support the conviction of possession of a dangerous weapon in violation of G. L. c. 269, § 10(*b*). In order to establish a violation of G. L. c. 269, § 10(*b*), the Commonwealth must prove that (1) the defendant was arrested for committing a breach of the peace; (2) the defendant had the weapon in his control at the time of his arrest; (3) the defendant was aware that he was carrying the weapon; and (4) the weapon was dangerous. G. L. c. 269, § 10(*b*). To the extent that the defendant asserts insufficient evidence on the breach of the peace element, the argument is misplaced. Those facts described above also establish

---

[4]We note, however, that the evidence as set forth above was sufficient to support the conviction.

that the defendant controlled the knife prior to and at the time of his arrest and that he was aware of its presence.

The only remaining issue is whether the knife that the defendant was carrying was a dangerous weapon. Here, the weapon was identified as a nine-inch steak knife with a four-inch straight blade.[5] Such a knife, although not specifically enumerated in the statute, falls within the general definition of a dangerous weapon as set out in the case law. See *Commonwealth* v. *Turner*, 59 Mass. App. Ct. 825, 828 (2003) ("Straight knives . . . are regarded as dangerous per se"). We therefore conclude that the judge did not err in determining that the steak knife did indeed constitute a dangerous weapon.[6]

*Judgment affirmed.*

---

[5]The defendant filed a motion to have the knife transmitted to this court. The panel denied the motion but ruled that the defendant could submit a photograph of the knife, with its dimensions "calibrated via the use of a ruler in the photograph." To date we have received nothing from the defendant.

[6]Moreover, even if the knife were not treated as a dangerous weapon per se, the defendant's open carrying of the knife on a public street, at 2:30 A.M., in the presence of pedestrians, supports an inference that he was handling the knife in a manner that made it a dangerous weapon and therefore was not carrying it for an innocent purpose. See *Commonwealth* v. *Turner*, *supra* at 829. Further support of this inference is provided by the defendant's attempt to conceal the weapon only after he was approached by police and the fact that his possession of the knife had made at least one passerby apprehensive.