The defendant Jamie Jensen appeals from her convictions for disorderly conduct, G. L. c. 272, § 53, resisting arrest, G. L. c. 268, § 32B, assault, G. L. c. 265, § 13A, and assault and battery on a police officer, G. L. c. 265, § 13D. On appeal, she argues that her convictions for disorderly conduct and resisting arrest were unsupported by legally sufficient evidence, and that improper questions by the prosecutor and the erroneous admission of a police dashboard camera videotape (dash cam video) warrant a new trial. We hold that the challenged convictions were supported by sufficient evidence but remand the case for a new trial on all counts.
Background. Jensen was driving her daughter Maisy down Boston Street in Springfield when she collided with Keith Gordon's pickup truck. It is disputed who caused the accident, which occurred near four police cadets who were outside their jurisdiction. Gordon noticed the cadets, drove up to them, and told them about the accident. One, Kenneth Baer, instructed Gordon to enter a nearby gas station while Baer called the Wilbraham police department. During this conversation, Jensen exited her vehicle and walked up to the cadets. At trial, Baer testified that he instructed Jensen to enter the same parking lot; Jensen testified that he did not so instruct her. Baer also testified that, at this time, Jensen was "very loud" and was "screaming at some point, saying 'He fucking hit me'-this and that-things of that nature."
After these exchanges, Gordon pulled into the nearby gas station to wait for the Wilbraham officers, while Jensen continued down Boston Street. Jensen returned to the gas station several minutes later, by which point the Wilbraham police had arrived, including Officer Joseph Brewer. It was about 5:00 P.M. and the gas station was busy, with patrons coming and going. Brewer testified that he was uniformed.
The witnesses disagreed about what happened next. Gordon and Brewer testified that Jensen exited her vehicle, began swearing at Gordon, and ran at him with a cocked right fist. Brewer then restrained her, spun her towards her vehicle, and, according to Brewer, told her that she was under arrest. Brewer further testified that she continued to struggle while pinned against the vehicle, and eventually, after warning her that he would pepper spray her if she did not comply, Brewer pepper sprayed her. He then cuffed her.
According to Jensen, after she exited her vehicle, Brewer approached her and told her that Gordon had reported a hit and run. She looked at Gordon and called him a "fucking asshole," and turned back towards her car to retrieve her license and registration. At this point, Brewer grabbed her arm tightly, she "swayed [her] other hand back," and Brewer "flung [her] on the car." He then slammed her against the car, pressed his knee into her back, cuffed her, told her that he would pepper spray her if she did not stop screaming, and subsequently pepper sprayed her. He sprayed her from a distance of at most a foot, when the instructions define the optimal range as between six and twelve feet. It caused Jensen to collapse, and resulted in a temporary inability to see, a feeling of restricted breathing, pain in her eyes that lasted three days, and corneal abrasions that lasted a week and required antibiotic ointment. According to Jensen, Brewer's act of flinging her onto the car tore her rotator cuff and caused her a lot of pain.
At trial, the Commonwealth introduced two videos into evidence. One, a gas station security video that lacked audio, depicted the events that occurred after Jensen exited her vehicle in the gas station, and also showed members of the public entering and exiting the gas station around the time these events occurred. The other, which was admitted over Jensen's objection, was Brewer's dash cam video; it began after Jensen had already been pepper sprayed and cuffed. This video does not capture any images of Jensen, but contains several minutes of audio of her swearing at Brewer and expressing substantial discomfort from the pepper spray.
Two other sequences of events at trial are relevant to this appeal. First, the prosecutor, an experienced attorney, attempted to elicit testimony from three different witnesses concerning Jensen's civil responsibility for the accident. Each time defense counsel promptly noted her objections. When the prosecutor first attempted to elicit this information from Gordon, the judge sustained defense counsel's objection, stating that this information is "[t]otally irrelevant." The judge also sustained defense counsel's objection when the prosecutor later asked Maisy whether insurance had paid a claim filed by her mother. Finally, the prosecutor asked Jensen whether she had filed a claim and whether she had been found responsible, after which the judge told him, "You'd better knock it off." Because defense counsel and the trial judge promptly intervened, no witness ever testified whether Jensen's insurance had paid for the costs of the accident or whether she had been found responsible.
The second sequence of events occurred during the prosecutor's cross-examination of Jensen, in which he asked her to comment on the credibility of the two police officer witnesses. The line of questioning, which was not objected to at trial, went as follows:
Q.: "And you heard the-Officer Baer testify and you stated he was lying, correct?"
A.: (No audible reply.)
Q.: "He was the one that told you to pull into the Shell Gas Station."
A.: "The Palmer police officer?"
Q.: "Yes."
A.: "He never told me to pull into the Shell Gas Station."
Q.: "So then next you heard Officer Brewer and you heard his testimony, correct?"
A.: "Yes."
Q.: "And a lot of his testimony was inaccurate, too, based on your testimony, correct?"
A.: "I'm only telling my story."
Discussion. 1. Sufficiency of the evidence. In assessing the sufficiency of the evidence, we consider whether the evidence, viewed in the light most favorable to the Commonwealth, could satisfy a rational trier of fact of each element of the crime beyond a reasonable doubt. See Commonwealth v. Latimore, 378 Mass. 671, 676-678 (1979).
a. Disorderly conduct. To be guilty of disorderly conduct, a person must, "with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof ... engage[ ] in fighting or threatening, or in violent or tumultuous behavior; or ... create[ ] a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." Commonwealth v. Chou, 433 Mass. 229, 232 (2001). On appeal, Jensen argues that the Commonwealth failed to establish the "public" element of the crime because it presented no evidence that the public was affected by Jensen's behavior.
Jensen's argument misstates the law. The Commonwealth need not establish that Jensen's conduct affected the public, but only that her conduct "affect[ed] or [was] likely to affect persons in a place to which the public or a substantial group has access." Commonwealth v. Mulvey, 57 Mass. App. Ct. 579, 582 (2003), quoting from Commonwealth v. A Juvenile, 368 Mass. 580, 586 (1975). For instance, in Commonwealth v. Lopiano, 60 Mass. App. Ct. 723 (2004), we held that the Commonwealth presented sufficient evidence of the public nature of the offense when the relevant conduct occurred in a motel parking lot that was a near a restaurant, shopping mall, and movie theater because, in those circumstances, "people could have seen or heard the defendant from any place of public access, such as a nearby sidewalk, publicly used path or road, shopping area or other neighborhood facility." Id. at 725, quoting from Mulvey, supra at 584. The dispositive fact was that people "could have seen or heard the defendant," not that anyone saw or heard him. Ibid.
Here, the Commonwealth presented evidence that the relevant events took place at around 5:00 P.M. in a busy gas station from which individuals were coming and going. Viewed in the light most favorable to the Commonwealth, this evidence establishes that the public likely could have been affected by Jensen's conduct.
b. Resisting arrest. A person is guilty of resisting arrest if, absent a defense, "he knowingly prevents or attempts to prevent a police officer, acting under color of his official authority, from effecting an arrest of the actor ... by ... using ... physical force or violence against the police officer." G. L. c. 268, § 32B(a ), inserted by St. 1995, c. 276.
Jensen first argues that the Commonwealth failed to present sufficient evidence that she knew she was under arrest. "An arrest occurs where there is [1] 'an actual or constructive seizure or detention of the person, [2] performed with the intention to effect an arrest and [3] so understood by the person detained.' " Commonwealth v. Grandison, 433 Mass. 135, 145 (2001), quoting from Commonwealth v. Cook, 419 Mass. 192, 198 (1994). "Whether a defendant understood that he was being arrested is determined with reference to an objective standard, what a reasonable man, innocent of any crime, would have thought had he been in the defendant's shoes." Commonwealth v. Montoya, 73 Mass. App. Ct. 125, 127 (2008) (quotation omitted), S.C., 457 Mass. 102 (2010). Viewed in the light most favorable to the Commonwealth, the arrest occurred when Brewer, in uniform, restrained Jensen, pinned her against the car, and told her she was under arrest. According to Brewer, Jensen continued to resist after this point. The jury were entitled to conclude in these circumstances that a reasonable person in Jensen's shoes would know she was under arrest, which she resisted. The Commonwealth thus presented sufficient evidence that Jensen knew she was under arrest.
Next, Jensen argues that the Commonwealth failed to present sufficient evidence that her acts were not done in self-defense, which is a defense to a charge of resisting arrest. See Commonwealth v. Urkiel, 63 Mass. App. Ct. 445, 448 (2005). If, drawing all reasonable inferences in favor of the defendant, there is sufficient evidence to raise the issue of self-defense, the burden shifts to the Commonwealth to prove beyond a reasonable doubt that the defendant's acts were not done in self-defense. See Commonwealth v. Graham, 62 Mass. App. Ct. 642, 651 (2004). A person may use force in self-defense only if the police used excessive or unnecessary force to effectuate the arrest. See id. at 652. Jensen concedes that she used force against Brewer, but argues that it was justified because Brewer's use of force against her was excessive or unnecessary. While her testimony sufficed to place the burden on the Commonwealth to prove beyond a reasonable doubt that her acts were not in self-defense, Brewer's testimony, viewed in the light most favorable to the Commonwealth, supports a conclusion beyond a reasonable doubt that his acts of restraining Jensen and pinning her against the vehicle were neither excessive nor unnecessary. (Because there was no evidence that Jensen resisted arrest in response to Brewer pepper spraying her, we need not and do not decide whether his use of pepper spray was excessive or unnecessary.) Therefore, the Commonwealth introduced sufficient evidence that Jensen did not act in self-defense.
2. Trial errors. a. Prosecutor's questions regarding Jensen's civil liability for the accident. Jensen argues, and the Commonwealth properly concedes, that the prosecutor's questions regarding Jensen's civil responsibility for the accident, after the judge properly sustained defense counsel's objections and repeatedly instructed the prosecutor not to ask these questions, were inappropriate. The Commonwealth argues, however, that these questions were not prejudicial because no witness testified that Jensen had been found responsible for the accident and because the judge gave the standard jury instruction that questions are not evidence.
The Commonwealth is wrong-the questions themselves were prejudicial. Despite unequivocally being told not to ask the questions, which suggested to the jury that fault for the accident was a relevant consideration, the prosecutor did so three times. The frequency of these questions drew the jury's attention to them and suggested that they were relevant when they were not. Even though the judge's instruction might have had some mitigating effect, it could not have eliminated prejudice from the questions in these circumstances.
b. Prosecutor's cross-examination of Jensen regarding the officers' credibility. Jensen next argues, and again the Commonwealth properly concedes, that the prosecutor acted improperly in requesting Jensen to comment on the credibility of Officers Baer and Brewer. The Commonwealth argues that there were too few of these unobjected-to questions to cause a substantial risk of a miscarriage of justice.
It is settled law that "a witness cannot be asked to assess the credibility of his testimony or that of other witnesses." Commonwealth v. Dickinson, 394 Mass. 702, 706 (1985). This is because questions regarding witnesses' relative credibility imply to the jury that differences between the witnesses' testimony can only be the result of lying, and "[s]uch implication is heightened when a prosecutor attempts to pose questions that require a defendant-witness in a criminal case to comment ... on the veracity of a police officer." Commonwealth v. Ward, 15 Mass. App. Ct. 400, 402 (1983). The prejudice from this implication is even worse when the prosecutor asks the defendant to comment on the credibility of multiple police witnesses, and when the case is largely a credibility contest between those witnesses and the defendant.
The Commonwealth is correct that we have declined to order a new trial when the prosecutor asked relatively few of these improper questions. See, e.g., Ward, supra (one improper question did not result in prejudicial error); Commonwealth v. Flanagan, 20 Mass. App. Ct. 472, 477-478 (1985) (four improper questions did not result in reversible error). However, our vacatur of the convictions is based on the cumulative effect of various instances of prejudice, and it is undeniable that these questions prejudiced Jensen. Indeed, the prosecutor in closing emphasized that Jensen's theme of the case was that "[t]he cops are lying."
c. Admission of the dash cam video. Finally, Jensen argues that the trial judge erred in admitting Officer Brewer's dash cam video over her objection. According to Jensen, the video lacked relevance, and any probative value the video might have offered was substantially outweighed by unfair prejudice resulting from the video's depiction of her behavior shortly after being pepper sprayed. In its brief, the Commonwealth argued that the video's depiction of Jensen's "loud and abrasive language" was relevant to establish Jensen's disorderly conduct, and that the video also showed that this conduct occurred in a "highly public environment." At oral argument, the Commonwealth conceded, correctly, that Jensen's cursing at Brewer after he pepper sprayed her would not constitute disorderly conduct. We review this issue for abuse of discretion. See Commonwealth v. Spencer, 465 Mass. 32, 52 (2013).
Even under this deferential standard, we conclude that the trial judge erred in admitting the video. Its probative value was minimal at best. As the Commonwealth concedes, the disorderly conduct charge was based on acts that occurred before the dash cam video began. Jensen's swearing at the person who pepper sprayed her is hardly evidence of prior disorderly conduct, and, to the extent it is, this would be through an impermissible inference that Jensen is a volatile person. See Commonwealth v. Crayton, 470 Mass. 228, 249 (2014) (subsequent bad acts are inadmissible to show bad character or propensity to commit crimes charged). Moreover, the Commonwealth also introduced the gas station's security camera video, which showed that the gas station was a public place. The marginal probative value of the dash cam video to the publicity element was trivial.
In addition to the obvious danger that the jury would draw an impermissible character or propensity inference, the video could have confused the jury about which behavior formed the basis of the disorderly conduct charge. Both other potential incidents-Jensen walking up the street towards Gordon and Baer while swearing and yelling at Gordon, and her swearing at Gordon and running at him with a cocked right fist-involve conduct very similar to that which the video depicted. Since the judge never told the jury that the videotaped conduct could not form the basis of a disorderly conduct conviction, the jury could have erroneously concluded that it did.[2] The risk is especially great here, where the witnesses disputed whether the charged conduct occurred, and going with the video would have allowed the jury to avoid having to resolve a credibility conflict. In these circumstances, it was an abuse of discretion for the judge to admit this unfairly prejudicial video.
d. Cumulative effects of prejudice. It is appropriate to consider the cumulative prejudicial effect of different errors. See Commonwealth v. Gonzalez, 28 Mass. App. Ct. 906, 906 (1989). Here, two of the three errors were objected to at trial, and each of them was prejudicial in its own right. Taken together, their prejudice warrants a new trial.
Conclusion. The judgments are vacated and the verdicts are set aside. The case is remanded to the trial court for further proceedings consistent with this memorandum and order.
So ordered.
Vacated and remanded.

We note that defense counsel did not request a limiting instruction as an alternative to excluding the video.